Garland F. DAILL, Plaintiff–Appellee,

v.

**SHEET METAL WORKERS' LOCAL 73 PENSION FUND, Defendant–Appellant.**

No. 96–1454.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1996.

Decided Nov. 13, 1996.

Tammie R. Grossman (argued), Bernard Shapiro, Prairie State Legal Services, Inc., St. Charles, IL, David Wolowitz, Prairie State Legal Services, Inc., Carol Stream, IL, for Garland F. Daill.

John J. George, Dennis J. Aukstik, Robert T. Oleszkiewicz (argued), Carolyn S. O'Gara, Michael Daley, Richard Andrew Toth, Chris A. Leach, Catherine S. Wilson, Mark G. Vanecko, Daley & George, Chicago, IL, Michael I. Richardson, Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for Sheet Metal Workers' Local 73 Pension Fund.

Before BAUER, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

Early in his working career Garland Daill accrued 12-¾ pension credits under the sheet metal union's private pension fund. But after 12 years he left the union and worked the next 30 years for the city of Chicago. He then returned to work as a sheet metal worker. Although he had this 30–year break in service, the pension plan enabled participants who forfeited credits to recover them by earning 12 consecutive calendar quarters of pension credit. After his return, Daill never worked 12 consecutive quarters. When the union denied his claim for the forfeited credits, he sued under ERISA to recover the benefits. The district court concluded that the fund's decision not to restore the forfeited credits was arbitrary and capricious, and granted Daill's motion for summary judgment. Because the plaintiff's suit was untimely and the pension fund acted reasonably in denying the participant's pension application, we reverse.

## I. Background

Garland Daill was a member of Sheet Metal Workers' Local 73 from 1937 to 1949. As was the case for many workers, his union's private pension fund provided pension benefits during that period. Under the fund's pension plan, a plan participant earned one quarter of pension credit by working 133 hours in a calendar quarter, or a unit of pension credit by working 532 hours in the year. Daill accrued 12-¾ pension credits during this period.

Daill left the union in 1949 and worked the next thirty years for the city of Chicago. When Daill left, under the terms of the plan he incurred a "permaent break in service" when six quarters passed without credited service. Accordingly, Daill forfeited all of his pension credits accrued from 1937 to 1949.

The plan trustees (in charge of managing and controlling the plan's assets) amended the plan in 1972 to provide that participants could recover pension credits forfeited due to a permanent break in service. A participant could recover the credits by earning 12 consecutive calendar quarters of pension credit. The "12 consecutive quarter rule" allows the trustees to plan for financial outlays such as pensions.[1]

In 1979, after a 30–year absence, Daill returned to "covered work," that is, work as a sheet metal worker with an employer contributing to the fund. From October 1979 through 1981, Daill earned nine consecutive calendar quarters of pension credit. However, Daill incurred a break in service during all four quarters of 1982 and the first two calendar quarters of 1983 by failing to work sufficient hours to earn at least one quarter of a pension credit. Daill claims that this break in service was involuntary because he could not find covered work during that period. Daill earned calendar quarters of pension credit in both the third and fourth quarters of 1983. In addition, he earned a full year of vesting service in 1983 under the terms of the plan by working at least 870 hours in the year.[2]

---

1. Pension funds are like other forms of insurance which set aside monies on the basis of contingencies, and the 12 consecutive quarter rule gives the trustees time to protect the fund's solvency by financially preparing to pay a pension. *See generally City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 721, 98 S.Ct. 1370, 1382, 55 L.Ed.2d 657 (1978).

2. A year of vesting service is different from a unit of pension credit. A year of vesting service is used to obtain nonforfeitable (*i.e.*, vested) pension benefits. An individual's accumulated pension credits determine the amount of his monthly pension. Under the terms of the plan, an employee who works 532 hours in a calendar year obtains a unit of pension credit, but he must work 870 hours in a year to be credited with a year of vesting service.

After being laid off, Daill sent a series of letters to the fund seeking to restore the 12–¾ pension credits forfeited by virtue of his permanent break in service. He sent his first letter in January 1982. One month later, he sent another letter, claiming to have regained his forfeited pension credits because he had satisfied the plan's 12 consecutive quarter rule. In May 1982, in a detailed response, the attorney for the fund informed Daill that he was· not entitled to a pension. He explained that Daill had forfeited the 12–¾· pension credits. he had accrued between 1937 and 1949, and that. he had returned to work in 1979 for only nine consecutive quarters, three quarters short of the 12 he needed to restore forfeited pension credits. According to the fund, Daill had to start his string of consecutive quarters over again because it had been interrupted. Moreover, the letter explained that the 12 consecutive quarters could not be pieced together by using the plan's grace period provisions, which allow for a one-year break in service under certain conditions. Finally, the letter informed Daill that he could appeal the fund's decision in accordance with the plan's provisions.

Daill appealed the fund's decision in writing. In March 1983, the fund through its attorney denied Daill's appeal. The two-page letter reiterated the original basis for the fund's decision denying Daill a pension: he had not returned to work for 12 consecutive calendar quarters.

Daill earned calendar quarters of pension credit in 1984, 1985, and 1986, but no more than three quarters consecutively. In May 1986, Daill filed a formal application for benefits with the fund,[3] once again claiming his forfeited pension credits. Daill presented the same argument he had made in 1982 (and the fund rejected in 1983), namely, that he could recover his pension credits even though he had not returned to work for 12 *consecutive* quarters. Soon afterward, the fund administrator responded in writing, explaining to Daill that his application had been denied by the trustees because while he had returned to work for "some quarters," he had

not returned for 12 consecutive quarters. Nearly six years later, Daill filed yet another application for pension benefits, which was denied for the same reason.

Daill sued the fund in district court in August 1993 under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Daill promptly moved for summary judgment against the fund for denying his application for pension benefits. The fund filed its own motion for summary judgment on the grounds that Daill's cause of action was barred by Illinois' 10–year statute of limitations for suits pertaining to written contracts because it accrued at the latest in March 1983, when the fund denied Daill's appeal for benefits.

## II. The District Court's Decision

The district court denied the fund's motion for summary judgment based on the statute of limitations. While it agreed with the fund that a 10–year limitations period applied to Daill's case, it held that Daill's cause of action did not accrue until he filed a formal application for benefits in 1986. The district court determined that Daill's cause of action did not accrue in May 1983—when the fund denied Daill's appeal—for three reasons: (1) Daill's 1982 claim was not a formal application for benefits; (2) the fund's response to Daill's initial claim was not clear and consistent; and (3) Daill continued to work after the fund denied his 1982 claim, and Daill's 1986 pension claim was based on this additional work.

The district court granted Daill's motion for summary judgment on the merits. It correctly noted that when a pension plan gives the trustees broad discretion to construe the plan's terms and allocate benefits, judicial review is limited to whether their decision was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989); *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 765 (7th Cir.1993). The court applied this standard and determined

---

**3.** Unlike Daill's 1982 pension claim in letter form, his 1986 claim consisted of a completed application. Both were in writing and filed with the trustees, which is all that the plan requires.

that the trustees acted arbitrarily and capriciously by not allowing Daill to restore his forfeited pension credits.

Although it conceded that Daill had not satisfied the strict 12 consecutive quarter rule, the district court held that two other plan provisions should have saved Daill's lost credits. The plan extends grace periods to breaks in service caused by a lack of available employment and lasting up to four consecutive quarters. The court concluded that Daill should have been extended a grace period for his 1982 break in service. Further, the plan states that a one-year break in service can be eliminated if an employee subsequently earns a year of vesting service, *i.e.*, works at least 870 hours during a calendar year. Daill worked over 870 hours during the last two quarters of 1983. The court concluded that this one-year break in service provision eliminated the effects of the 1982 break. It also concluded that the period of January–June, 1983 could not count as a break in service because Daill returned to work and earned a full pension credit for the 1983 calendar year.[4] By using the grace period and break in service rules in this fashion, the district court bridged the six quarters in 1982–83 during which Daill failed to earn any pension credits. It held that the nine consecutive quarters Daill worked from 1979–81, coupled with the three consecutive quarters of work from 1983–84, satisfied the 12 consecutive quarter rule, thus reinstating Daill's 12-¾ forfeited pension credits.

The court denied the fund's motion for reconsideration, which purportedly contained no new argument and rehashed the fund's previous positions. The court further sanctioned the fund in the amount of attorneys' fees for filing the motion to reconsider.

## III. Analysis

■ We review a grant of summary judgment *de novo*. *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 864 (7th Cir.1995). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* In this

case, as in many ERISA plan cases, there is no dispute over material facts and the court is asked simply to review the trustees' interpretation of the plan. Initially, however, we review the district court's decision denying the fund's motion for summary judgment based on the statute of limitations.

### A. Statute of Limitations

■ ERISA itself does not impose a statute of limitations for the bringing of civil actions. In cases such as Daill's where a participant sues under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking to recover benefits purportedly due him under the terms of his ERISA plan, the court applies the most analogous state statute of limitations. *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 464–65 (7th Cir. 1991). Both parties are correct that the most analogous Illinois statute of limitations is the 10–year limitations period for suits pertaining to written contracts. *Id.*; 735 ILCS 5/13–206.

■ The principal issue before us is when Daill's cause of action accrued, *i.e.*, when the 10–year statute of limitations clock started ticking. Even when relying on an analogous state statute of limitations, as in this case, we look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1138 (7th Cir.1992). Section 502(a)(1)(B) assures that claimants are not denied benefits rightfully theirs under the terms of an employee benefit plan. Accordingly, we have held that causes of action under this section accrue when a claim for benefits is denied. *Id.* at 1139. *See also Jenkins v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 254 (7th Cir. 1983).

The fund contends that Daill's cause of action accrued at the latest in March 1983, when the fund denied Daill's appeal for benefits. Daill contends that his cause of action did not accrue until 1986, when he filed a formal application for pension benefits. In support of this later date of accrual, Daill

4. He earned this full pension credit by working over 532 hours in the last two quarters of 1983.

argues: first, that his correspondence in 1982 did not cause his claim to accrue because it did not constitute a formal application for benefits, but rather was a request for a determination of his pension credits under the plan; and second, that his pension application in 1986 constituted a new claim for benefits that had nothing to do with his 1982 claim.

We agree with the fund that Daill's cause of action accrued in March 1983 when the fund denied Daill's appeal and unequivocally informed him that he had not recovered his forfeited pension credits under the 12 consecutive quarter rule. While Daill's initial letter to the fund in January 1982 sought a determination of his pension credits under the plan ("what [pension will] I be entitled to this July 1982?"), his subsequent correspondence disputed the fund's interpretation of the 12 consecutive quarter rule. Daill wrote the fund again in February 1982 claiming he was entitled to a pension because "I have qualified with the provision adopted by the Trustees stating that if a member worked twelve consecutive quarters he regains his lost credits." The attorney representing the fund responded in May 1982, again informing Daill that "you are not entitled to a pension from Local 73." In its three-page letter, the fund carefully and comprehensively explained the basis for its decision. It informed Daill that he had *not* returned to work for 12 consecutive quarters, and that he could not apply the fund's grace period provisions to the 12 consecutive quarter rule. In March 1983 the trustees denied Daill's appeal of this decision because Daill "[had] not accumulated 12 consecutive quarters of employment." Thus, at the latest, the fund unequivocally denied Daill's claim to benefits in March 1983.

We reject Daill's assertion that his cause of action did not accrue until he actually filed a formal application for benefits, as opposed to seeking and then challenging a determination concerning his pension credits. His correspondence (especially his February 1982 letter) and subsequent appeal unequivocally contested the fund's denial of a pension under the 12 consecutive quarter rule. While Daill did not complete an application form (as he did in 1986), his claim was in writing and directed to the fund's trustees. This is all section 6.1 of the plan requires of pension "applications." We are reluctant to draw a fine line between claims for benefits before they actually are due, and formal benefit applications. Under Daill's theory, some employees would file claims (and appeals) and not have their causes of action accrue, while others would file essentially the same claim in the form of an application and have theirs accrue. In either case, the trustees have examined a written request for benefits and made a determination of the participant's rights under the terms of the plan. Accordingly, the interests of pension funds and plan participants are better served by the consistent treatment of any claim or application for pension benefits so that a cause of action accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary.

This conclusion is consistent with a decision of the Ninth Circuit, *Martin v. Construction Laborer's Pension Trust,* 947 F.2d 1381, 1385 (9th Cir.1991), holding that a participant's cause of action to enforce rights under a pension plan accrues upon a "clear and continuing repudiation of his claim." [5] Like Daill, Martin filed an application with his pension fund to determine his pension credits and was informed that he had forfeited his accrued credits due to a break in service. Martin appealed that determination, but the plan reaffirmed its decision. Nearly five years later, Martin sought to have the plan reopen his case based on new evidence, but by then the statute of limitations had expired. The time had begun to run with the plan's original denial of his claim.

Martin argued that the statute had not run on his claim because rather than formally applying for benefits, he only requested a

---

5. *See also Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.) (ERISA cause of action accrues "when there has been 'a repudiation by the fiduciary which is *clear* and made known to the beneficiar[y]' ") (citations omitted; emphasis in original), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

determination of his pension credits under the plan. The court of appeals termed that a "formalistic difference," and held that the plan had made a "clear and continuing" repudiation of Martin's claim when it denied his appeal. 947 F.2d at 1385. At that time, "[t]he interpretation by the pension fund of the terms of the plan as they apply to Martin was certain," and the plan had "made an unequivocal determination that Martin would be denied credit" due to his break in service. *Id.* at 1386.

We see little difference between *Martin* and this case. Like Martin, Daill lost his accumulated pension credits due to a break in service. Like Martin, Daill initially filed an inquiry concerning his pension, then challenged the fund's interpretation of the plan when he learned that it would leave him without a pension. Both appealed those determinations, which were denied, and both were unequivocally told the reasons why. In Daill's case, the fund could not have been more clear in rejecting his claim to a pension: he had to work 12 *consecutive* calendar quarters in order to restore his lost pension credit, and he had not done so. Accordingly, like the Ninth Circuit, we find that Daill's cause of action accrued once the fund rejected Daill's claim on the basis of its interpretation of the 12 consecutive quarter rule, and made that interpretation known to Daill.

Our holding is consistent with *Jenkins* and *Tolle*. In *Jenkins*, we noted that a cause of action under § 502(a)(1)(B) accrues when a pension application is denied. 713 F.2d at 254. That holding was tailored to the facts of that case, which did not involve a denial of a claim made *before* an application for benefits. In *Tolle*, we stated the rule more generally: "Section 502(a)(1)(B) claims accrue when ... benefits are denied." 977 F.2d at 1139. In each of these cases, a clear and unequivocal repudiation of a claim to benefits starts the limitations period. In Daill's case, we can safely determine that such a repudiation occurred in March 1983, when the fund denied his appeal.

In the alternative, Daill argues that his 1986 pension application constituted a *new* cause of action, commencing a new statute of limitations period. However, he concedes that his 1986 pension application merely "renewed his efforts to reinstate the lost cred-

its." While Daill earned calendar quarters of pension credit in 1984, 1985, and 1986, no more than three of these quarters were consecutive. His 1986 application really was no different from his 1982 claim: both attempted to overcome the 12 consecutive quarter rule, which Daill learned in 1983 he could not do. Moreover, the fund's response remained unchanged: it continued to insist that Daill needed 12 *consecutive* calendar quarters of work to reinstate his lost credits, and that his 6–quarter break in service in 1982–83 interrupted his string of consecutive quarters. Daill's 1986 pension application was nearly a carbon copy of his 1982 claim. If we allowed him to restart the statute of limitations period merely by filing another claim on the same basis as his previous claim, the limitations period would be meaningless. *See Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547, 553 (7th Cir.1996) ("Important policies underlie statutes of limitations: rapid resolution of disputes; repose for those against whom a claim could be brought; avoidance of litigation involving lost evidence or distorted testimony of witnesses.").

In short, we find that Daill's cause of action under § 502(a)(1)(B) accrued in March 1983 when the trustees clearly and unequivocally rejected his claim for a pension under the terms of the plan. He did not file his cause of action in the district court until August 1993. Accordingly, Daill's suit was untimely under the applicable 10–year statute of limitations period, and should have been dismissed by the district court.

## B. The Merits

The fund also appeals the district court's decision granting Daill summary judgment on the merits. Even if Daill's claim were timely, we would reverse the district court.

 If a pension plan gives the plan's trustees broad discretion to make final and binding decisions with respect to the plan's application and interpretation, as it does in this case, we will not upset the trustees' decision unless it is arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989); *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 765 (7th Cir.1993). This means that the trustees' decision stands

so long as it is based on a reasonable interpretation of the plan's language and the evidence in the case. *Russo, id.* The district court found that the trustees arbitrarily and capriciously denied Daill's application to recover forfeited pension credits. We disagree.

Because the parties agree that under the terms of the plan Daill forfeited his 12-¾ pension credits earned from 1937 to 1949, the only issue is whether he *recovered* those pension credits.[6] The trustees insist that he did not because he never returned to work for 12 consecutive quarters, and further assert that the plan's grace period provisions do not apply to Daill's case.

We cannot say that the trustees acted arbitrarily and capriciously by refusing to apply the grace period provisions. The 12 consecutive quarter rule is the portion of the plan most relevant to Daill's case, so it was reasonable for the trustees to apply it to Daill's pension claim. It is the only provision that specifically addresses how "pension credit forfeited due to [a] break in service [can] be reinstated." Moreover, the one-year break in service and grace period provisions are not means to restore previously forfeited credit. The one-year break in service provision prevents a break from becoming permanent, whereupon the worker would lose accrued pension credits. Grace periods accomplish the same thing. By their terms, these provisions determine only whether earned service credit (such as Daill's nine consecutive quarters from 1979–81) is forfeited due to a break in service, not whether previously forfeited credit is *restored.*

Technically, it is unnecessary to determine whether applying the grace period provision would change the result in this case because the fund reasonably determined that those provisions do not apply to a case such as Daill's. It is worth noting, however, that even under Daill's (and the district court's)

theory of the case, Daill still did not satisfy the 12 consecutive quarter rule.

The district court determined that Daill's 1982 break in service was excused under the plan's grace period provision because Daill could not find available covered work during that period. Alternatively, the district court found that Daill's 1982 break was covered by the plan's one-year break in service provision because Daill earned a full year of vesting service in 1983.

Even if the district court correctly excused Daill's 1982 break in service, his break in service in 1983 is another matter. Daill did not earn any pension credit during the first two quarters of 1983, then returned to work to earn credit during the last two quarters. The district court concluded that the first two quarters without pension credit did not count against Daill because he ended up earning a full year of pension credit for the year (by working at least 532 hours in the year under the terms of the plan).

The district court was mistaken. Under the plan, pension credit is of two types, quarter and full. They are distinct units of credit. Under Daill's plan, a worker who has earned a full pension credit cannot claim to have earned four calendar *quarters* of credit unless he worked at least 133 hours in each quarter. Under the 12 consecutive quarter rule, Daill had to earn 12 *consecutive calendar quarters* of pension credit in order to recover previously forfeited benefits. While Daill earned a full pension credit for 1983, he did not earn any credit during the first two quarters of 1983. These two quarters interrupt his string of consecutive quarters. He had to start a new string of 12 consecutive quarters (which he did not do) in order to recover his forfeited pension credits.

### IV. Conclusion

Daill bore the burden of demonstrating that the trustees had no good reason to deny

---

6. Daill raises an ancillary issue as to whether his 12–34. pension credits were fully vested, *i.e.,* nonforfeitable, under the terms of the plan and ERISA. *See* 29 U.S.C. § 1053(a)(2)(C)(ii). One of Daill's problems is that there is no record evidence that he worked at least 870 hours (the minimum requirement for vesting under the plan) in each of those years. In all events, the plan specifically provides that a participant is not entitled to a year of vesting service if it precedes

a permanent break in service, and Daill incurred a permanent break between 1949 and 1979. Moreover, although ERISA provides that an individual with at least 10 years of credited service is vested, *id.,* that provision does not apply to years of service worked before ERISA became law and which were forfeited, as in Daill's case, according to the terms of a pre-ERISA plan. *See* 29 U.S.C. § 1053(b)(1)(F).

his application to recover lost benefits. He did not meet it. On the contrary, the trustees had a good reason: Daill failed to comply with the single rule specifically designed to allow workers such as him to recover forfeited pension credits. Their decision was reasonable and should not have been overturned. Lastly, having found that the district court erred in determining that Daill's claim was timely and that the trustees' decision was arbitrary and capricious, we would be hard-pressed to uphold the court's sanctions against the fund for asking the court to reconsider its decision. Accordingly, the district court's order denying the fund's motion for summary judgment on statute of limitations grounds, and granting Daill's motion for summary judgment on the merits, is REVERSED, the court's order imposing sanctions against the fund is VACATED, and the case is REMANDED with directions to enter judgment for the fund.