**Zoridea BOBAN, Christina Borrero, Keith Christopher, on behalf of themselves and as representatives of a class of persons similarly situated, Plaintiffs,**

**v.**

**The BANK JULIUS BAER POSTRETIREMENT HEALTH AND LIFE INSURANCE PROGRAM, The Bank Julius Baer & Co. Ltd. Severance Pay Plan, Bank Julius Baer & Co. Ltd. and Julius Baer Americas, Inc., Defendants.**

No. 09 Civ. 9407(PKC).

United States District Court, S.D. New York.

July 9, 2010.

Peter George Eikenberry, The Law Office of Peter G. Eikenberry, New York, NY, for Plaintiffs.

John Houston Pope, Epstein, Becker & Green, P.C., New York, NY, for Defendants.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge:

Plaintiffs bring this putative class action alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants the Bank Julius Baer Postretirement Health and Life Insurance Program (the "Insurance Program"), the Bank Julius Baer & Co. Ltd. Severance Pay Plan (the "Severance Plan") and Artio Global Investors Inc. ("AGI"), sued here as Julius Baer Americas, Inc. (together, the "Moving Defendants") move to dismiss plaintiffs' Complaint for failure to state a claim. For the reasons stated below, the Moving Defendants' motion is granted in part and denied in part. In addition, the claims against defendant Bank Julius Baer & Co. Ltd. (the "Bank") are dismissed without prejudice, pursuant to Rule 4(m), Fed. R.Civ.P.

## BACKGROUND

### I. *Factual History*

The following facts are taken from plaintiffs' Complaint, and are accepted as true for the purposes of this motion. The Bank is a Swiss wealth management firm with an office in Manhattan. (Compl. ¶¶ 3–4.) The Bank operated the Insurance Program and the Severance Plan "for the purposes of providing medical, dental, and life insurance coverage to current and former employees." (*Id.* ¶ 5.) The Complaint alleges, on information and belief, that in or around 2007, AGI became plan administrator for the Insurance Program and Severance Plan. (*Id.* ¶ 6.)

Plaintiffs are three former employees of the Bank. Zoridea Boban began working for the Bank in March 1979 and was terminated on November 28, 2003. (*Id.* ¶¶ 7–8.) Christina Borrero began working for the Bank in or around September 1986. (*Id.* ¶ 9.) The Bank terminated her employment on July 22, 2003. (*Id.* ¶ 10.) Keith Christopher began working for the Bank in or around 1982 and the Bank terminated his employment on November 28, 2003. (*Id.* ¶¶ 11–12.)

Each of the plaintiffs entered into a separation agreement with the Bank, under which they were considered retirees. (*Id.* ¶ 13.) Each separation agreement provided that "as a retiree, your coverage under [the Bank's] group health and dental insurance plans [will] continue as it is now, provided that you continue to pay the required employee contributions...." (*Id.* ¶ 14.) The Bank sent each named plaintiff a letter, dated December 1, 2003 (the "December 1 Letter"), which stated: "as a retiree, your medical and dental coverage will continue with the bank provided you

pay the current active employee's share of the monthly premium." (*Id.* ¶ 15.) According to the Complaint, the Bank's "promise that each named plaintiff could participate in the [Insurance Program and Severance Plan] by paying the same rates paid by current active employees was a material factor in inducing the named plaintiffs to accept and sign the separation agreements." (*Id.* ¶ 16.)

Shortly thereafter, the Bank sent to each plaintiff a letter, dated December 30, 2003 (the "December 30 Letter"). (*Id.* ¶ 18.) In the December 30 Letter, the Bank advised the plaintiffs that their "retiree contributions for medical, dental and life insurance coverage would be increased as detailed in an enclosed plan document, which disclosed that the new contribution rates for retirees would be greater than the rates for current active employees." (*Id.*)

By letter dated November 2, 2006, plaintiffs' counsel requested that the Bank, as plan administrator, review the increases set forth in the December 30 Letter. (*Id.* ¶ 19.) The plan administrator denied plaintiffs' claims in January 2007, " 'based on the Company's reserved right to amend the Plan' found in 'Sections IV and V of the Plan document,' and in 'the Employee Handbook dated June 2003.' " (*Id.* ¶ 20–21 (quoting January 3, 2007 letter from Patricia Sullivan).)

According to plaintiffs, the "Plan document" is something called the "Amendment to the Bank Julius Baer Postretirement Health and Life Insurance Program," which became effective on December 31, 2003. (*Id.* ¶ 22.) The reservation of rights contained in the Employee Handbook referred to in Ms. Sullivan's letter, states that the Bank "reserves the right to amend or termi-

nate any of these programs or to require or increase employee premium contributions toward any benefits at its discretion." (*Id.* ¶ 24 (quoting Employee Handbook).) However, according to plaintiffs, the Insurance Program is not one of the plans referred to as "these plans" in the Employee Handbook's reservation of rights. (*Id.* ¶ 25.)

Plaintiffs appealed their adverse benefit determination, and that appeal was denied by letter dated August 16, 2007. (*Id.* ¶ 28.) As with the earlier denial of benefits, plaintiffs' appeal was denied because of the Bank's reserved right to amend the plan. (*Id.*) [1]

## II. *Procedural History*

Plaintiffs filed their Complaint on November 12, 2009. (Docket No. 1.) On February 22, 2010, the Moving Defendants moved to dismiss the Complaint. (Docket No. 10.) The motion was fully briefed as of April 2, 2010. (Docket Nos. 14–16.)

The Moving Defendants submitted a declaration of John Houston Pope, dated February 22, 2010 (the "Pope Decl.") and a supplement Pope Declaration, dated April 2, 2010, both in support of their motion to dismiss. (Docket Nos. 12, 16.) Together, these declarations annexed fourteen documents. I may consider some, but not all of those documents on a motion to dismiss pursuant to Rule 12(b)(6) without converting it into a motion for summary judgment. Because I decline to convert this motion, I will only consider those documents which are relevant to the arguments raised and were either incorporated by reference into the Complaint or integral to plaintiffs' claims. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d

---

**1.** The Complaint also contains a set of class action allegations that are not relevant to this    motion.

Cir.1991). These documents will be identified in later discussion.

Plaintiffs have never served the Bank with a summons and a copy of the Complaint. At a pretrial conference, plaintiffs consented to dismissing the Bank. *See* Fed.R.Civ.P. 4(m).

DISCUSSION

### I. *Applicable Legal Standard*

■ "To survive a motion to dismiss" pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plausibility is present "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). When considering a Rule 12(b)(6) motion, the court draws all reasonable inferences in the plaintiff's favor and accepts as true all well-pleaded factual allegations in the complaint. *Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir.2010).

### II. *Plaintiffs' Breach of Fiduciary Duty Claim Is Time Barred*

In one of their claims for relief, plaintiffs allege that the Bank and AGI breached the fiduciary duties they owe to plaintiffs, in violation of ERISA section 404(a)(1)(A), (B) & (D), 29 U.S.C. § 1104(a)(1)(A), (B) & (D). Section 413 of ERISA provides, in relevant part, that a plaintiff must commence an action for breach of a fiduciary duty on or before the earlier of "(1) six years after ... the date of the last action which constituted a part of the breach or violation," or "(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," except in cases of fraud or concealment, which is not alleged here. 29 U.S.C. § 1113. The parties dispute whether this action was filed within three years of the "earliest date on which the plaintiff had actual knowledge of the breach or violation." *Id.*

■ A "plaintiff has 'actual knowledge of the breach or violation' within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 193 (2d Cir.2001). Applying this definition of "actual knowledge," plaintiffs' breach of fiduciary duty claim accrued no later than November 2, 2006, when their attorney sent a letter to the Bank, as plan administrator, asking for a review of the increase in the retiree contributions which had occurred nearly three years before. (Compl. ¶¶ 18–19.) Although the allegations in the Complaint are sufficient to show that the claim for breach of fiduciary duty is time barred, that conclusion is bolstered by a review of the November 2, 2006 letter sent by plaintiffs' counsel.[2] In that letter, plaintiffs appealed the determination that the "required contributions for their benefits would be increasing because of the health plan's obligation to fund their retiree medical, dental and life insurance benefits." (Pope Decl. Exh. 10 at 1.) The letter also stated that plaintiffs believed that the

---

**2.** This letter is properly before the Court because it is incorporated by reference into the Complaint and integral to plaintiffs' claim, as they rely on it to demonstrate exhaustion of administrative remedies. *Cortec,* 949 F.2d at 47.

Bank's "interpretation of the [Insurance Program] is not consistent with the terms of the severance agreements and other plan documents." (*Id.*)

▮ Plaintiffs argue that they did not have "actual knowledge" of the alleged breach until there was a "clear, unequivocal, and continuing repudiation" of their claims, which, according to plaintiffs, did not occur until their appeal was denied on August 16, 2007. (Pls. Br. at 6.) In support of their argument, plaintiffs rely on *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62 (7th Cir.1996) and *Mitchell v. Shearson Lehman Brothers, Inc.,* No. 97 Civ. 0526(MBM), 1997 WL 277381 (S.D.N.Y. May 27, 1997), *declined to follow by Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan,* 572 F.3d 76, 80 (2d Cir.2009), both of which are inapposite. *Daill* and *Mitchell* addressed claims for the denial of benefits, brought pursuant to section 502 of ERISA. *Daill* 100 F.3d at 65; *Mitchell,* 1997 WL 277381, at *2. Unlike breach of fiduciary duty claims, which are governed by the limitations period set forth in section 413, ERISA does not contain a statute of limitations for benefits claims brought pursuant to section 502. *Daill,* 100 F.3d at 65; *Mitchell,* 1997 WL 277381, at *2. Therefore, as both of the *Daill* and *Mitchell* courts recognized, for denial of benefits claims federal courts must borrow the most analogous state statute of limitations, while looking to federal common law to determine when the cause of action accrues. *Daill,* 100 F.3d at 65; *Mitchell,* 1997 WL 277381, at *2. Neither of those courts construed the limitations period contained in section 413.

Plaintiffs cite to one case in which a court has held that a plaintiff does not have "actual knowledge" of a breach, within the meaning of section 413, until the plaintiff's appeal process was completed. *Clarke v. Ford Motor Co.,* 220 F.R.D. 568,

575 (E.D.Wis.2004) (citing *Daill,* 100 F.3d at 67), *vacated by Clarke ex rel. Pickard v. Ford Motor Co.,* 228 F.R.D. 631 (E.D.Wis. 2005). However, because that holding is inconsistent with Second Circuit precedent, I decline to follow it.

Because plaintiffs had actual knowledge of the defendants' alleged breach of fiduciary duty no later than November 6, 2006, over three years before they filed the instant action, their breach of fiduciary duty claim is dismissed as time barred.

III. *Plaintiffs Have Adequately Pled a Claim for Benefits Under Section 502 of ERISA*

In a second claim for relief, plaintiffs assert a claim for benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). That section "permits a civil action by a plan participant 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 82 (2d Cir.2001) (quoting 29 U.S.C. § 1132(a)(1)(B)). "Essentially, plaintiffs assert under this section a 'contractual right under a benefit plan.'" *Id.* (quoting *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir. 1999)).

▮ Generally, a company is free to modify the terms of its plan. *Abbruscato v. Empire Blue Cross and Blue Shield,* 274 F.3d 90, 97 (2d Cir.2001). If, however, that company has promised vested benefits, its promise will be enforced. *Id.* To avoid dismissal "on an ERISA contractual vesting claim, plaintiffs need only identify 'specific written language that is reasonably susceptible to interpretation as a promise.'" *Id.* (quoting *Joyce v. Curtiss-Wright Corp.,* 171 F.3d 130, 134 (2d Cir. 1999)); *see also Devlin,* 274 F.3d at 83.

■ The benefit, which the plaintiffs seek and which they claim is vested, is the right to continue medial and dental coverage at the current employee rate, as opposed to a higher rate charged to retirees.[3] According to the Complaint, the alleged promises to vest plaintiffs' benefits were contained in the separation agreement each plaintiff entered into with the Bank, and in the December 1 Letter each plaintiff received from the Bank. The separation agreements each provided that "as a retiree, your coverage under the [Bank's] group health and dental insurance plans will continue as it is now, provided that you continue to pay the required employee contributions...." (Compl. ¶ 14.) The December 1 Letter provided that "as a retiree, your medical and dental coverage will continue with [the Bank] provided you pay the current active employee's share of the monthly premium." (*Id.* ¶ 15.) A reasonable inference is that "employee contributions" and "current active employee's share of the monthly premium" refer to the rates charged to employees, and do not allow for a separate and higher rate charged to retirees, as plaintiffs allege certain of the defendants have done.

The Moving Defendants argue that the language in the separation agreements and December 1 Letter could not create a vested right to benefits for two reasons. First, according to the Moving Defendants, these informal documents could not modify the terms of the Insurance Program. However, in *Schonholz v. Long Island Jewish Medical Center*, the Second Circuit held that an agreement to vest benefits "would only have to be memorialized at the same level of formality that [the employer] chose in promulgating the [plan] in the first place." 87 F.3d 72, 78 (2d Cir.1996).

Plaintiffs have not alleged that a formal plan document governing the Insurance Program existed at the time they signed the separation agreements or received the December 1 Letter, and the Moving Defendants have not provided the Court with a copy of such a plan. Therefore, it is possible that, although informal, the separation agreement and December 1 Letter could contain a promise to vest benefits.[4]

The Moving Defendants' second argument relies on the reservation of their right to amend the plan which was contained in the Employee Handbook. The Employee Handbook stated that the Bank "reserves the right to amend or terminate any of these programs or to require or increase employee premium contributions toward any benefits at its discretion." (Compl. ¶ 24.) Although the specific language in the reservation of rights regarding premium contributions applies to employees, not retirees, that clause also contains a more general provision allowing the Bank to amend or terminate the programs described. (*Id.*) However, as plaintiffs point out, this reservation of rights was not contained in the same documents that contained the alleged promises vesting the benefits they seek. *See Abbruscato,* 274 F.3d at 99–100 ("Because the same document that potentially provided the 'lifetime' benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.... In adopting this approach, we emphasize that our holding today is limited to those situations where the same document contains both the promise and the reserva-

---

**3.** For the purposes of this motion, the Moving Defendants accept that this qualifies as a benefit under ERISA.

**4.** Of course, the Court is free to revisit this issue at the summary judgment stage, after the parties have developed a factual record.

tion of rights."). The Moving Defendants argue that change of status letters received by two of the plaintiffs also contained the reservation of rights language as well as the description of their future retiree benefits. Despite the parties consent to have the Court consider these letters, because they were not attached to or referred to in the Complaint, and were not integral to plaintiffs' claims, I cannot do so without converting the Moving Defendants' motion to dismiss into a motion for summary judgment. I have declined to do so. Based on the foregoing, and drawing all reasonable inferences in their favor, the plaintiffs have adequately alleged that the statements contained in the separation agreements and the December 1 Letter may be reasonably susceptible to interpretation as a promise to vest plaintiffs' benefits.

The Moving Defendants argue that the Complaint does not make any allegations regarding the Severance Plan, and thus, plaintiffs have failed to state a claim against that defendant. The Complaint alleges that both plans were administered "for the purposes of providing medical, dental, and life insurance coverage to current and former employees." (Compl. ¶ 5.) This allegation is sufficient at this stage to allow plaintiffs' vesting claim against the Severance Plan to proceed. Therefore, the Moving Defendants motion is denied with respect to plaintiffs' section 502(a)(1)(B) vesting claim.

IV. *The Moving Defendants' Motion to Dismiss the Promissory Estoppel Claim is Denied*

To state a claim for promissory estoppel in the ERISA context, a plaintiff must satisfactorily allege: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, [ ](4) an injustice if the promise is not enforced," and (5) extraordinary circumstances. *Devlin,* 274 F.3d at 86 (quotation marks omitted).

To satisfy the first element, a plaintiff must "demonstrate a promise that [the promissor] reasonably should have expected to induce action or forbearance on [the promisee's] part." *Schonholz,* 87 F.3d at 79. Although this is a different standard than that required to adequately allege a promise to vest benefits, for substantially the reasons stated above, plaintiffs' have adequately alleged a promise. The higher premiums charged to retirees adequately alleges an injury.

I consider the remaining elements together. Plaintiffs have alleged that the defendants "used the promised benefits to induce plaintiffs and the class members to retire and to accept and sign the separation agreements," and that plaintiffs "and the class members relied on defendants' promise in deciding to retire and to accept and sign the separation agreements." (Compl. ¶ 45, 46.) Some of the allegations in the Complaint contradict the allegation that the plaintiffs were induced to retire. For example, in each of paragraphs 8, 10 and 12 of the Complaint, plaintiffs allege that the Bank "terminated" their employment. (*Id.* ¶¶ 8, 10, 12.) Plaintiffs also allege that "[u]pon termination, each named plaintiff entered into a separation agreement with the bank, under which they were each considered 'retirees.'" (*Id.* ¶ 13.) In addition, each of the separation agreements signed by the plaintiffs— which I may consider because they are integral to plaintiffs' claim—states that it concerns the "termination of your employment with" the Bank. (Pope Decl. Exh. 2 at 1; Exh. 3 at 1; Exh. 5 at 1.) At a minimum, however, plaintiffs have alleged that they were induced to sign the separation agreements by the promise of the benefits. This is sufficient to allege injustice and reliance.

The Second Circuit has held that using the promise of benefits to intentionally induce action on behalf of a plaintiff

may constitute extraordinary circumstances. *Abbruscato*, 274 F.3d at 101; *Schonholz*, 87 F.3d at 79–80. At the pleading stage, I cannot conclude that allegedly using a promise of benefits to induce a plaintiff to sign a separation agreement, and then denying the plaintiff those benefits, is not an extraordinary circumstance as a matter of law. This does not foreclose the possibility that, when placed in context after a factual record has been developed, this alleged inducement may not amount to extraordinary circumstances as a matter of law.

Finally, the Moving Defendants also argue that a promissory estoppel claim may only be asserted against the maker of the promise, in this case, the Bank, and therefore, the other defendants cannot be liable on this claim. The Complaint identifies the Bank as plan administrator (Compl. ¶ 5), and assuming the truth of the allegations, it is reasonable to infer that when the Bank made the alleged promises, it was acting in its capacity as plan administrator. Neither party has addressed in more than a passing manner whether a promise by a plan administrator can give rise to a promissory estoppel claim against a benefits plan or a successor plan administrator. For this reason, the Moving Defendants' motion to dismiss the promissory estoppel claim is denied without prejudice. The Moving Defendants may revisit these issues in a motion for summary judgment after the conclusion of fact discovery.

CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss (Docket No. 10) is GRANTED in part and DENIED in part. All claims against the Bank are dismissed without prejudice.

SO ORDERED.