274 F.3d 90 (2nd Cir. 2001)
 CALOGERA ABBRUSCATO, SAL AUTOLINO, GENEVIEVE BANGER, MARIE BRAMSON, ERNA SEALS-BROWN, VINCENT CARLIN, VINCENT CEFOLA, ELAINE CIRINO, VINCENT CIRINO, TIMOTHY CONNORS, JUANITA R. EVELYN, JEANETTE GRAVES, THOMAS HUGHEY, ELAINE V. HUTTON, RALPH LEGGETT, JOHN O. MCGEE, MARIA MELE, JOHN MEROLLA, CYRILLA R. PALERMO, ALBERT PEDOTA, MARY A. REIDY, NEVILLE SARGEANT, GEORGE SCHIRM, SHEILA SPARLING, MARY HOFFMEISTER-TRAVERS, JOHN D. VELLA, HOWARD WALSH, ESTATE OF JOANNA W. BLACKWOOD, ROBERT NOVAS, CATHERINE BRANDOFF, BARBARA L. MCCARTHY, EUSTACE GRIFFITH, LULA MAE MILLER, MARTIN VARLEY, AND GWEN ZUCKER, PLAINTIFFS,
IRMA M. ALICEA, JACK BROOK, ARTHUR ENGLISH, JOSEPH FLEMING, ANTHONY HECKEL, MARIE MORRIS, ANN MUSTO, ROSE MARIE O'CONNOR, ELAINE BAILEY-PEREIRA, JAMES PHOTIS, JOHN PIRRO, MARY PURCELL, HENRY REYNOLDS, ALBERT RICUITO, SHEILA SANSOSTI, GERARD SUSSUNGHAM, JOSEPH L. CERRONE, JR., AND DAPHNE SMALL, PLAINTIFFS-APPELLANTS,
v.
EMPIRE BLUE CROSS AND BLUE SHIELD, DEFENDANT-APPELLEE.
 Docket No. 00-9490
August Term, 2000
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: June 20, 2001
Decided December 6, 2001
 
 Appeal from the judgment of the United States District Court for the Southern District of New York (Barbara S. Jones, Judge) entered on October 26, 2000, granting appellee's motion for summary judgment in this action brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., challenging Empire Blue Cross and Blue Shield's decision to reduce life insurance benefits for its former employees who retired after January 1, 1989. AFFIRMED in part, VACATED and REMANDED in part.[Copyrighted Material Omitted]
 Alvin Green and Martin Seham, Seham, Seham, Meltz & Petersen, New York, New York, for Appellants.
 Gary H. Glaser, Seyfarth Shaw, New York, New York, for Appellee.
 Before: Jacobs, F.I. Parker, and Sotomayor, Circuit Judges.
 
 F.I. Parker, Circuit Judge
 
 1
 In this case brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq, appellants challenge defendant-appellee Empire Blue Cross and Blue Shield's ("Empire") reduction in life insurance benefits to former employees who retired after January 1, 1989. Our decision in Kunkel v. Empire Blue Cross and Blue Shield, 274 F.3d 76 (2d Cir. 2001), also issued today, concerned a similar challenge to this same reduction. In Kunkel, we vacated the district court's grant of summary judgment to Empire, principally concluding that the district court had applied the wrong standard to the retirees' claim that their life insurance benefits had vested pursuant to an alleged promise by Empire, and remanded to the district court for further proceedings. We issue a separate opinion in this case because these appellants base their claims for life insurance benefits on different documents.
 
 
 2
 For the reasons set forth below, we vacate the summary judgment and remand appellants' claims in part, and affirm the grant of summary judgment in part.
 
 I. BACKGROUND
 
 3
 The sixteen appellants are former Empire employees who retired between 1989 and 1998. Six of the retirees retired from Empire pursuant to an early incentive program offered in 1992, known as the Voluntary Separation Opportunity Program ("VSOP").[1] Two of the appellants retired from Empire pursuant to a similar program offered in 1993, known as the Voluntary Incentive Program ("VIP").[2] Some of the remaining appellants retired in the normal course, not pursuant to any early retirement incentive program. Others retired pursuant to a "Separation Agreement and General Release."
 
 
 4
 As in Kunkel, we set forth in some detail the language of the documents issued by Empire which describe the life insurance benefits.
 
 
 5
 In 1987, Empire created and distributed an employee handbook, entitled "Your Handbook," which included a summary plan description (the "1987 SPD") of Empire's group life insurance benefits. For retirees, this plan provided life insurance coverage at an amount equal to one's annual salary at retirement, provided at no cost to the retiree. Specifically, the plan stated that:
 
 
 6
 If you retire... at age 65 or older with 10 or more years of full-time service; or at age 55 or older with 20 or more years of full-time service; or at any age, with 30 or more years of full-time service, your basic life insurance will be reduced by 10% as of your retirement date, and by an equal amount on each of the next four anniversaries of your retirement date so that 50% of your life insurance coverage remains in force for the rest of your life, at no cost to you.
 
 
 7
 J.A. at 342 (emphasis added). The last sentence on the last page of this document informs employees that "[o]ther important information about [their] Group Life Insurance Plan and its administration can be found in the section entitled `Benefit Administration.'" J.A. at 348. Contained in the "Benefit Administration" section is the following statement:
 
 
 8
 Empire Blue Cross and Blue Shield maintains the Plans for the exclusive benefits [sic] of its employees. The company expects and intends to continue the Plans in your Benefits Program indefinitely, but reserves its right to end each of the Plans, if necessary. The company also reserves its right to amend each of the Plans at any time. J.A. at 352 (the "reservation of rights" clause).
 
 
 9
 In 1992, Empire introduced the VSOP, a voluntary workforce reduction program. In connection with this program, Empire distributed materials outlining eligibility and program benefits. Participation in this program required eligible employees to "voluntarily resign from Empire in exchange for certain benefits." J.A. at 141. These "certain benefits" included life insurance coverage, on substantially the same terms as provided in Empire's earlier plans. While the VSOP's description of health insurance benefits included an explicit reservation of Empire's right to adjust coverage, the description of life insurance benefits did not. In the "Administration" section of these materials, however, Empire "reserve[d] the right to amend and/or terminate the VSO Program at any time for any purpose." J.A. at 145. This section also warned that "Empire may or may not adopt new or modified programs or benefits or take other actions in the future that, depending on your individual circumstances, may be more or less advantageous to you than the current Program." Id.
 
 
 10
 In 1993, Empire offered the VIP, another early retirement incentive program similar to the VSOP. VIP documents informed employees that "[y]our insurance benefits may be extended to you for your lifetime..., depending on your age and years of service. You will be eligible for retiree insurance benefits if you normally qualify or if you would qualify by adding five years to your age and five years to your service under the VIP." J.A. at 167. The VIP provided for life insurance benefits virtually identical to those described in earlier plans; that is, benefits reduced by 10% on retirement and for four subsequent years, until reaching one's annual salary. Like the VSOP materials, the VIP's healthcare insurance description contained a reservation of rights, but the description of life insurance benefits did not. The VIP's Administration section included the following language:
 
 
 11
 Empire reserves the right to amend and/or withdraw the VIP at any time for any purpose with respect to any employee, up to the date on which that employee's Resignation and General Release and Covenant Not to Sue becomes effective. Empire also reserves the right to announce new and different plans and programs as business needs require. J.A. at 170.
 
 
 12
 The "Separation Agreement and General Release" entered into by certain appellants provided that "Empire reserves the right to change or eliminate, at any time, these retiree medical and life insurance benefits." J.A. at 181. It further provided that "[t]his separation agreement and release constitutes the sole and complete understanding between the parties." J.A. at 182.
 
 
 13
 Three of the normal retirees[3] received a letter upon retirement which described the retirement life insurance benefits:
 
 
 14
 The life insurance that you have under our group program... will also be continued. You are presently insured for [two times your annual salary at retirement]. This amount will be reduced by 10% on your retirement date,... and will continue to be reduced by 10% of the original face value during the next four anniversaries of your retirement,... until it reaches [your annual salary] where it will remain constant (subject to the disclaimer below).
 
 
 15
 J.A. at 183-84. The disclaimer stated that "Empire retains sole discretion to modify or terminate each of the benefits described above at anytime." J.A. at 184.
 
 
 16
 On June 24, 1998, Empire distributed a letter which informed retirees that "the Board of Directors voted to adopt a number of new benefit provisions for current employees, retirees and long-term disabled, that will go into effect January 1, 1999." J.A. at 57. These new provisions were necessary, the letter explained, for Empire to "distinguish itself in the complex world of health care" and to "bring Empire into line with [its] business competitors." J.A. at 57. The letter attached a summary of benefits changes, which announced that "[l]ife insurance will be provided at a flat $7,500" for those retirees who retired between January 1, 1989 and prior to June 23, 1998. J.A. at 58.
 
 
 17
 Several appellants wrote to Empire, expressing their discontent with these changes and demanding an explanation. In response, Empire explained that the costs of maintaining retiree benefits at their previous levels had become prohibitive. J.A. at 69. Additionally, in response to some of the other retirees' letters, Empire cited to the reservation of rights clause included in "Your Handbook." J.A. at 82- 83.
 
 
 18
 Plaintiffs filed their complaint in April 1999 in the Southern District of New York. Their amended complaint alleged seven claims challenging Empire's reduction in life insurance benefits for these retirees. The first two claims sought to enforce the terms of the life insurance plan and to recover benefits due under the plan's terms under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1). The third, fourth, and seventh claims contended that Empire breached its fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Appellants' fifth claim contended that Empire was barred from reducing their life insurance benefits by the doctrine of promissory estoppel. Finally, appellants asserted a claim for penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), due to Empire's alleged failure to provide timely plan information upon request.
 
 
 19
 The parties filed cross-motions for summary judgment. On October 24, 2000, the district court issued its opinion and order denying plaintiffs' motion and granting summary judgment to Empire. Abbruscato v. Empire Blue Cross and Blue Shield, No. 99 CIV. 2970 (BSJ), 2000 WL 1585084, at *7 (S.D.N.Y. Oct. 24, 2000). The district court rejected plaintiffs' reliance on "informal communications" as evidence of their contractual vesting claim, and concluded that the relevant plan documents, including the 1987 SPD as well as the VSOP and VIP documents, clearly informed plaintiffs that Empire could modify or terminate the benefits. Id. at *2-*5. The district court rejected plaintiffs' breach of fiduciary duty and penalty claims by reference to its discussion in Byrnes v. Empire Blue Cross and Blue Shield, No. 98 CIV. 8520 (BSJ), 2000 WL 1538605, at *9-*10 (S.D.N.Y. Oct. 18, 2000). Abbruscato, 2000 WL 1585084, at *6. With respect to plaintiffs' promissory estoppel claim, the district court concluded that plaintiffs failed to demonstrate either the basic elements of promissory estoppel or that there were "extraordinary circumstances," as required in ERISA cases. Id. at *6-*7.
 
 
 20
 We review the grant of a summary judgment motion de novo, and "reversal is required if there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 77 (2d Cir. 1996) (citations and internal quotation marks omitted).
 
 
 21
 This appeal followed, and oral argument was heard in tandem with Kunkel.
 
 II. DISCUSSION
 
 22
 Appellants contend that Empire contractually promised to vest life insurance benefits through the relevant plan documents, retirement letters, Empire's position in an unemployment administrative proceeding, and informal communications. Appellants also assert a claim under the doctrine of promissory estoppel. Finally, appellants contend, as an alternative to their contractual vesting claim, Empire breached its fiduciary duties under ERISA by making misleading statements concerning the retirees' life insurance benefits.[4]
 
 A. Contractual Vesting
 
 23
 Because the essence of the appellants' contractual vesting claim is identical to that asserted in Kunkel, we repeat below the standards set forth in that case:
 
 
 24
 Plaintiffs claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which permits a civil action by a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Essentially, plaintiffs assert under this section a "contractual right under a benefit plan." Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999).
 
 
 25
 "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss- Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995); see also Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 133 (2d Cir. 1999)(stating the general rule that under ERISA an employer welfare plan is not vested and that an employer has the right to terminate or unilaterally amend the plan at any time).[5] "[I]f a [plan] document unambiguously indicates whether retiree... benefits are vested, the unambiguous language should be enforced." Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp., 116 F.3d 976, 980 (2d Cir. 1997) ("Multifoods"). Thus, even though Empire is "generally free" to modify its life insurance plan, if Empire promised vested benefits, those benefits will be enforced.
 
 
 26
 Kunkel, 274 F.3d at 82. In this Circuit, to avoid summary judgment on an ERISA contractual vesting claim, plaintiffs need only identify "specific written language that is reasonably susceptible to interpretation as a promise." Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 134 (2d Cir. 1999).
 
 
 27
 These appellants, unlike those in Kunkel, do not urge us to review the pre-1987 SPDs issued by Empire in search of this language. Instead, these appellants contend that the 1987 SPD contained in "Your Handbook," the VSOP and VIP documents, retirement letters, and Empire's representations in the context of unemployment benefits proceedings in New York state courts all demonstrate that Empire promised to vest life insurance benefits at the level stated upon retirement.
 
 1. The VSOP and VIP Retirees
 
 28
 Appellants quote the VSOP and VIP language at length in support of their contractual vesting claim, emphasizing that both programs' materials include a reservation of rights clause within its health insurance description but not within its life insurance description. Additionally, both documents describe life insurance benefits as a "lifetime" benefit. The VSOP description states: "If you have at least 5 years of vested service in the pension plan and your age plus completed years of service... equal 65 or more, you are eligible for lifetime health insurance and life insurance coverage...." J.A. at 142. The VIP description states: "Your insurance benefits may be extended to you for your lifetime or may be provided for an additional six months, depending on your age and years of service. You will be eligible for retiree insurance benefits if you normally qualify or if you would qualify by adding five years to your age and five years to your service under the VIP." J.A. at 167. We believe that both statements are reasonably capable of being interpreted to provide a vested lifetime life insurance benefit at the level described in the materials, so long as the VSOP or VIP retiree met the age and years of service qualifications.
 
 
 29
 The district court concluded that both the VSOP and the VIP materials contained a reservation of rights clause which effectively prevented any life insurance coverage from vesting. Abbruscato, 2000 WL 1585084, at *3-*4. We disagree. The VSOP provides that Empire "reserves the right to amend and/or terminate the VSO Program at any time for any purpose. The Corporation also reserves the right to announce new and different plans and programs as business needs require, although there are no plans to do so at this time." J.A. at 145 (emphasis added). We do not believe that this statement unambiguously reserves Empire's right to reduce the life insurance benefits provided by the VSOP. Instead, this language is capable of being interpreted to mean that Empire merely reserved the right to change the program for those individuals who have not already retired under the terms described, not the right to alter the described benefits for those individuals who had retired under those terms.
 
 
 30
 The VIP document's purported reservation of rights is even less compelling. That document states: "Empire reserves the right to amend and/or withdraw the VIP at any time for any purpose with respect to any employee, up to the date on which that employee's Resignation and General Release and Covenant Not to Sue becomes effective. Empire also reserves the right to announce new and different plans and programs as business needs require." J.A. at 170 (emphasis added). By its own terms, Empire's purported right to amend the VIP expired for these retirees. Further, Empire's ability to announce new and different plans in the future does not affect the terms under which these appellants retired.
 
 
 31
 Because the statements in the VSOP and VIP describing the lifetime benefits are susceptible to interpretation as a promise of vested benefits, and because neither the VSOP nor the VIP contain unambiguous reservation of rights clauses, we vacate the district court's grant of summary judgment to Empire and remand for further proceedings. Additionally, because we conclude that the VSOP and VIP documents are ambiguous, we instruct the district court to allow the parties to present extrinsic evidence concerning the meaning of these ambiguous provisions. See Kunkel, 274 F.3d at 84-85 (citing Bidlack v. Wheelabrator Corp., 993 F.2d 603, 609 (7th Cir. 1993) (en banc) (Posner, J.)).
 
 2. The Normal Retirees
 
 32
 In contrast to the VIP and VSOP documents, we conclude that the 1987 SPD does not contain any ambiguity. Those appellants who retired in normal course claim that their life insurance vested pursuant to language included in the 1987 SPD, which provided that their life insurance in the amount of their annual salary at retirement "remains in force for the rest of [their] li[ves], at no cost to [them]." J.A. at 342. As noted above, however, the same SPD (albeit in a different section of the SPD) included a reservation of rights clause, which stated: "The company expects and intends to continue the Plans in your Benefits Program indefinitely, but reserves its right to end each of the Plans, if necessary. The company also reserves its right to amend each of the Plans at any time." J.A. at 352 (emphasis added). Additionally, the introduction to the handbook containing the life insurance plan provided that Empire "expect[s] to continue the policies and benefits described here; but, [it] might someday have to change some of them or introduce new ones." J.A. at 339.
 
 
 33
 The district court concluded that, because "Empire... expressly reserved the right to amend or terminate the benefit program... [it] never expressed an intention to vest the life insurance benefits in the plaintiffs." Abbruscato, 2000 WL 1585085, at *5. With respect to the retirees who base their contractual vesting claim on the 1987 SPD contained in "Your Handbook," we agree with this conclusion. Cf. Moore v. Met. Life Ins. Co., 856 F.2d 488, 491-92 (2d Cir. 1988) (emphasizing that, under ERISA, "[a]utomatic vesting does not occur in the case of welfare plans," and rejecting a contractual vesting claim where the employer "clearly reserved in the plan documents and in the SPDs the right to amend or terminate the plans at issue").
 
 
 34
 In so concluding we decide the question left open by our decision in American Federation of Grain Millers, AFL-CIO v. International Multifoods Corp., 116 F.3d 976, 982-83 (2d Cir. 1997) ("Multifoods"). In Multifoods, we noted that we were "not faced with the question of how a document should be interpreted when it includes a general statement that all the benefits provided under the plan could be amended or terminated but also includes specific terms which could reasonably be interpreted as promising vested retiree benefits." Id. Because we ultimately concluded in Multifoods that the relevant SPD could not "reasonably be interpreted as promising vested benefits," we declined to resolve the issue. Id. at 982.
 
 
 35
 In Joyce, we came closer to resolving the question. In Joyce, the relevant SPD provided: "During your retirement, you and your covered dependents will have the same... coverage as you had while active at no cost to you." Joyce, 171 F.3d at 136. The SPD also contained a reservation of rights clause that "explicitly mention[ed] that the company `reserves the right to end or amend'" the benefits coverage offered. Id. Additionally, the employer had distributed summary annual reports which informed employees that coverage would terminate should their Collective Bargaining Agreement terminate. Id at 132. We concluded:
 
 
 36
 Although we have not joined those circuits that have adopted the position that "a general amendment provision in a welfare benefits plan is of itself sufficient to unambiguously negate any inference that the employer intends for employee welfare benefits to vest contractually," we believe that the SPD's reservation of rights clause, when combined with the termination language of the [summary annual reports], precludes any viable claim that the SPD served to vest the retirees' benefits.
 
 
 37
 Id. at 136 (quoting Spacek v. Maritime Ass'n, 134 F.3d 283, 293 (5th Cir. 1998)).[6]
 
 
 38
 Here, unlike in Multifoods or in Joyce, we have SPD language that both appears to promise lifetime life insurance coverage at a particular level and clearly reserves Empire's right to amend or terminate such coverage. Because the same document that potentially provided the "lifetime" benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.
 
 
 39
 The Sixth Circuit has similarly concluded, where a group of General Motors retirees challenged a reduction in health coverage, that the relevant SPD provided that lifetime health coverage would be provided at no cost. See Sprague v. Gen. Motors Corp., 133 F.3d 388, 401 (6th Cir. 1998) (en banc). The same SPD also provided that "General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet." Id. The Sixth Circuit reasoned:
 
 
 40
 We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change.... As the Third Circuit explained in a similar case, "`the promise made to retirees was a qualified one: the promise was that retiree medical benefits were for life provided the company chose not to terminate the plans, pursuant to clauses that preserved the company's right to terminate the plan under which those benefits are provided.'"
 
 
 41
 Id. (quoting In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 58 F.3d 896, 904 n.12 (3d Cir. 1995)).
 
 
 42
 In adopting this approach, we emphasize that our holding today is limited to those situations where the same document contains both the promise and the reservation of rights. In this vein, we distinguish the argument here from that in Kunkel, where one SPD promised lifetime benefits but an SPD issued subsequently contained a reservation of rights clause. Kunkel, 274 F.3d at 79-80. In Kunkel, we concluded that the relevant provisions were only those contained in the earlier SPD, and that the reservation of rights clause contained in the later SPD was ineffective as to those retirees. Id. at 84.
 
 
 43
 We therefore affirm the district court's conclusion with respect to the contractual vesting claim based on the 1987 SPD.[7]
 
 B. Promissory Estoppel
 
 44
 In Kunkel we set forth the framework for a promissory estoppel claim under ERISA:
 
 
 45
 "[P]rinciples of estoppel can apply in ERISA cases under extraordinary circumstances." Schonholz, 87 F.3d at 78. A plaintiff must satisfy four elements to succeed on a claim of promissory estoppel: "`(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.'" Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999) (quoting Schonholz, 87 F.3d at 79). Additionally, "an ERISA plaintiff must `adduce[] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] `extraordinary circumstances' requirement as well.'" Aramony, 191 F.3d at 151 (quoting Devlin v. Transp. Comms. Int'l Union, 173 F.3d 94, 102 (2d Cir. 1999)). Schonholz provides an example of such extraordinary circumstances, where the employer used promised severance benefits to induce the plaintiff to retire. Schonholz, 87 F.3d at 79-80.
 
 
 46
 Kunkel, 274 F.3d at 85.
 
 
 47
 This claim is viable only with respect to those former employees who retired pursuant to either the VSOP or VIP. They contend that Empire intentionally induced them into taking early retirement and foregoing future years of salary and the opportunity to obtain other life insurance. Such intentional inducement, appellants argue, satisfies the "extraordinary circumstances" requirement set forth in Schonholz, 87 F.3d at 78-80. Empire contends that the VSOP and VIP documents cannot support a promissory estoppel claim, because given the reservation of rights clauses in these documents, plaintiffs cannot demonstrate that Empire promised lifetime life insurance benefits at a particular level. Empire further contends that appellants have failed to establish any "extraordinary circumstances."
 
 
 48
 We agree with appellants and therefore remand this claim to the district court. These appellants have sufficiently demonstrated the four basic elements of promissory estoppel plus "extraordinary circumstances" to avoid summary judgment. As described above, appellants have identified language in the VSOP and VIP documents that can reasonably be interpreted as a promise. Appellants have demonstrated reliance by retiring early based, in part, on this promise.
 
 
 49
 Without question, the reduction in life insurance benefits injures these appellants. Finally, appellants have adequately demonstrated (assuming a fact finder concludes a promise was made) that an injustice will result should Empire's promise not be enforced.
 
 
 50
 Additionally, appellants have alleged sufficiently extraordinary circumstances surrounding these early retirement programs. As these documents state, Empire offered these early retirement incentive programs "as a financial incentive to those employees who voluntarily decide to resign or retire from Empire" because Empire "need[ed] to reduce [its] overall expenses." J.A. at 147 (VSOP), 171 (VIP). From these statements, it is reasonable to conclude that Empire used the VSOP and VIP as an inducement to persuade appellants to retire; if a trier of fact were to so conclude, this would suffice as an extraordinary circumstance. Devlin, 173 F.3d at 102 ("[T]he remarkable consideration in Schonholz was the defendants' use of promised severance benefits as an inducement to persuade Schonholz to retire."). The reasoning of Schonholz supports our conclusion:
 
 
 51
 If [defendant] had not transmitted the... letter [which promised severance benefits], Schonholz might never have submitted her resignation. [Defendant] then would have had to choose between firing Schonholz and keeping her on for an undetermined period. Each option presumably entailed disadvantages... because [defendant] chose neither. For instance, firing Schonholz might have affected employee morale.... In other words, by agreeing to leave amicably, Schonholz conferred a benefit on [defendant], one that may be quantifiable.
 
 
 52
 Schonholz, 87 F.3d at 79-80. By accepting the VSOP or VIP offer, appellants likewise have presumably conferred a benefit on Empire, and prevented it from having to resort to salary reductions, layoffs or firings during those years. A trier of fact could reasonably find that Empire intentionally induced appellants to accept the offer to retire in order to avoid having to take these less desirable steps. Because of these disputed issues of fact, summary judgment was inappropriate. We must therefore remand this claim to the district court.
 
 C. Breach of Fiduciary Duty
 
 53
 Appellants contend on appeal that, in the alternative to their contractual vesting claim, Empire breached its fiduciary duty by repeatedly providing misleading information about "lifetime" life insurance benefits at a particular level. ERISA § 404(a)(1) outlines fiduciary duties:
 
 
 54
 a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;... and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
 
 
 55
 29 U.S.C. § 1104(a). We have restated this statutory requirement: "A fiduciary must discharge his duties `solely in the interests of the participants and beneficiaries.' He must do this `for the exclusive purpose' of providing benefits to them. And he must comply `with the care, skill, prudence, and diligence under the circumstances then prevailing' of the traditional `prudent man.'" Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982) (Friendly, J.) (quoting ERISA §§ 404(a)(1)(A) &(B)). An employer has "a duty to deal fairly and honestly with its beneficiaries." Ballone v. Eastman Kodak Co., 109 F.3d 117, 124 (2d Cir. 1997).
 
 
 56
 Empire asserts here, as it did in Kunkel, that appellants cannot maintain this claim because "there is no private action for breach of fiduciary duty under ERISA when another remedy is available under 29 U.S.C. § 1132." Appellee's Br. at 32. In today's decision in Kunkel, we rejected this assertion and concluded that the Supreme Court's decision in Varity Corp. v. Howe, 516 U.S. 489, 515-16 (1996), contrary to Empire's assertion, "did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered appropriate." Kunkel, 274 F.3d at 90.
 
 
 57
 Empire also repeats here its argument that it was not acting in a fiduciary capacity, and therefore cannot be liable under this section. We rejected that contention in Kunkel, 274 F.3d at87. We adopt Kunkel's holding that "Empire may have been acting as a fiduciary when it communicated with its employees and retirees concerning the contents of the welfare benefits plan." Id. (citing Varity Corp., 516 U.S. at 502-03; Flanigan v. Gen. Elec. Co., 242 F.3d 78, 84 (2d Cir. 2001); and Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998)).
 
 
 58
 As in Kunkel, we conclude here that there are genuine issues of material fact to be resolved by a trier of fact regarding this claim. In this vein, we repeat our analysis in Kunkel:In repeatedly describing its life insurance benefit as remaining constant for life, Empire may have violated this duty to deal honestly with the plan beneficiaries. Even if, on remand, the trier of fact determines that there was no promise to vest the life insurance benefits, Empire may have still violated any fiduciary duties in its retiree letters and other communications which promised lifetime benefits but failed to note that Empire could reduce or terminate these benefits at any time. "[W]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 57 F.3d 1255, 1264 (3d Cir. 1995) (concluding that Unisys had breached its fiduciary duty where it "affirmatively and systematically represented to its employees that once they retired, their medical benefits would continue for life-even though as the district court concluded in rejecting the retirees' contract claim, the plans clearly permitted the company to terminate benefits"); cf. Becher v. Long Island Lighting Co. (In re Long Island Lighting Co.), 129 F.3d 268, 271 (2d Cir. 1997) ("An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan.").
 
 
 59
 Kunkel, 274 F.3d at 88. We therefore remand this claim to the district court to "permit a trier of fact to evaluate Empire's communications with [appellants] for affirmative misrepresentations regarding plan benefits and for failure to provide completely accurate plan information. A trier of fact could find that there was a fiduciary duty and that Empire has breached it." Id. at 89.
 
 III. CONCLUSION
 
 60
 For the reasons stated above, we affirm the district court's grant of summary judgment only with respect to the contractual vesting claim based on the 1987 SPD. As to the contractual vesting and promissory estoppel claims based on the VSOP and VIP, we vacate and remand to the district court for further proceedings. Finally, we likewise vacate and remand the breach of fiduciary duty claims.
 
 
 
 NOTES:
 
 
 [1]
 These six appellants are Irma Alicea, Arthur English, Joseph Fleming, Anthony Heckel, Rose Marie O'Connor, and Gerard Sussingham.
 
 
 [2]
 These two appellants are Marie Morris and Sheila Sansosti.
 
 
 [3]
 These individuals are Jack Brook, James Photis, and Henry Reynolds.
 
 
 [4]
 Appellants do not assert on appeal their claim for penalties under ERISA § 502(c)(1).
 
 
 [5]
 The parties do not dispute that life insurance benefits are such "welfare benefits" under ERISA. See 29 U.S.C. § 1002(1).
 
 
 [6]
 Additionally, in Devlin v. Transportation Communications International Union, we affirmed the district court's conclusion that "`Plaintiffs' claim to vested welfare benefits is contradicted by the union's unambiguous reservation in the Plan documents of its right to amend the Plan.'" 173 F.3d 94, 103 (2d Cir. 1999) (quoting the district court opinion).
 
 
 [7]
 As described in our decision in Kunkel, 274 F.3d at 79-80, Empire distributed summary plan descriptions prior to 1987. These earlier SPDs contained no reservation of rights clause. In Kunkel, we held that these SPDs included language that was reasonably capable of being interpreted as promising to vest life insurance benefits upon eligibility for retirement. Id. at 84-85.
 Unlike the Kunkel plaintiffs, these appellants do not base their claim to life insurance benefits on the pre-1987 SPDs. Instead, these appellants contend that they are contractually entitled to the contested life insurance benefits under either the 1987 SPD, entitled "Your Handbook," the VSOP documents, or the VIP documents, depending on retirement circumstances. Additionally, they rely on letters from Empire and other informal communications concerning the life insurance benefits. Although we are acutely aware of the anomaly created by this differing litigation strategy, there does not appear to be a principled analysis which affords these appellants relief in this appeal based on the pre-1987 SPDs. Appellants apparently did not argue this theory below nor did they present it on appeal, although they did include reference to the pre-1987 SPDs in their amended complaint. Indeed, during oral argument, counsel expressly disavowed any reliance on the pre-1987 SPDs.
 Because we are remanding appellants' cause to the district court, it is possible that these appellants may seek to amend their complaint to add such a theory. Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Because plaintiffs have alluded to these pre-1987 SPDs in their complaint and have generally alleged claims under ERISA § 502(a)(1) to enforce the terms of the plan, it may be that the complaint "contains allegations that could support [such] a cause of action." Manning v. Utilities Mut. Ins. Co., 254 F.3d 387, 402 (2d Cir. 2001) (although affirming the dismissal of one type of claim, concluding that plaintiff should be allowed to replead to "allege more sufficiently" a different but related claim). We express no view as to whether the interests of justice favor allowing plaintiffs to amend to allege this theory specifically.