# In the

# United States Court of Appeals
## For the Seventh Circuit

——————

No. 03-1855

INTERNATIONAL UNION OF UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, U.A.W. and its LOCAL 803, JOSEPH
WADZINSKI and ELTON KOPPLIN,

*Plaintiffs-Appellants*,

v.

ROCKFORD POWERTRAIN, INC.,

*Defendant-Appellee.*

——————

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 00 C 50393—**Philip G. Reinhard**, *Judge.*

——————

ARGUED OCTOBER 22, 2003—DECIDED DECEMBER 3, 2003

——————

Before FLAUM, *Chief Judge*, EASTERBROOK and WILLIAMS,
*Circuit Judges*.

FLAUM, *Chief Judge.* This is a class action on behalf
of retired employees and surviving spouses of retired
employees of Rockford Powertrain, Inc. ("RPI"). They claim
that RPI promised to provide its retirees and their surviv-
ing spouses with health and life insurance benefits for the
duration of their lives, and that RPI's unilateral reduction,
and later termination, of those benefits violated the terms
of a collective bargaining agreement, Section 502 of the

Employee Retirement Income Security Act, 29 U.S.C. § 1132, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Both parties filed motions for summary judgment on the issue of whether RPI contractually was obligated to maintain retirement benefits for the life of its retirees and their surviving spouses. The district court granted summary judgment in favor of RPI, finding that the language of the plan documents included an unequivocal reservation of RPI's right to modify the retirement benefits provided, and further that RPI was not equitably estopped from modifying the benefits. For the reasons stated herein, we affirm.

## I. Background

In 1988, Rockford Powertrain, Inc. ("RPI") acquired a manufacturing plant located in Rockford, Illinois from the Borg-Warner Corporation ("Borg-Warner"). RPI hired the majority of the plant's existing labor force, including named plaintiffs JosephWadzinski, Elton Kopplin, and all members of the class. At that time, RPI also assumed the then-existing collective bargaining agreement and collectively bargained pension annuity agreement between Borg-Warner and International Union of United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). However, RPI did not adopt BorgWarner's retirement plan nor did it agree to provide retirement benefits for any of Borg-Warner's retirees.

Borg-Warner's retirement plan included subsidized health benefits and fully subsidized life insurance benefits for retirees. The plan document that described the terms of retirement benefits included the following "Future of the Plans" provision: "[a]lthough the company expects to continue the plan indefinitely, it reserves the right to modify, amend, suspend or terminate them at any time."

RPI adopted a post-retirement benefit plan similar to Borg-Warner's. The terms of the plan were described in a booklet entitled "Your Group Insurance Plan: Hourly," dated June 27, 1988. In the "Future of the Plans" section, the booklet stated that "although the company expects and intends to continue the plan indefinitely, it reserves the right to modify, amend, suspend or terminate them at any time." The plan description stated that retirees' "health insurance is continued until your death . . . if you die after retirement, health coverage may be continued for your spouse and children." It further stated that "[i]n the event this group plan is terminated, [health insurance] coverage for you and your dependents will end immediately." In contrast to the description of health insurance benefits, the plan description's life insurance benefits section contained no statement of RPI's intent to maintain the benefits for the life of the retiree, nor any statement regarding the effect of termination of coverage.

RPI and UAW assented to a collective bargaining agreement in 1991 after the Borg-Warner-UAW collective bargaining agreement expired and, in 1994, 1995, and 1998, assented to subsequent collective bargaining agreements. The 1998 collective bargaining agreement, effective through March 4, 2001, governed the relationship between the parties at the time of the events relevant to this litigation. That collective bargaining agreement, like all of the previous collective bargaining agreements between the parties, included a provision (hereinafter "bargaining provision") stating that

> the Company and the Union for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of

either or both of the parties at the time that they negotiated or signed this Agreement. However, this Agreement may be amended or modified . . . in writing by mutual agreement.

The collective bargaining agreements reflected the negotiations between RPI and UAW regarding employee and retiree insurance benefits. Indeed, the collective bargaining agreements state that"[t]his will confirm that during the . . . negotiations, the Company concurred with the Union that the . . . Insurance Agreement . . . [is] considered a part of the overall labor agreement." According to both parties, there is no separate "Insurance Agreement"; the insurance plan descriptions published by RPI serve as the "Insurance Agreement" referenced by the collective bargaining agreement.

RPI republished the post-retirement benefits program in 1991, 1995, and 1998. The 1998 plan description is entitled "Hourly Benefit Plan Information" ("plan description"). Every plan description published by RPI states in the "Future of the Plans" section that "[a]lthough the company expects and intends to continue the plan indefinitely, it reserves the right to modify, amend, suspend or terminate them at any time," (hereinafter "reservation of rights clause"). The post-retirement health benefits section of the plan description included two terms relevant to the duration of health benefits. First, the document informed retirees that their "health coverage is continued until . . . death . . .[i]f you die after retirement, health coverage may be continued for your spouse," (hereinafter "lifetime benefits clause"). Secondly, "in the event this group plan is terminated, coverage for you and your dependents will end immediately," (hereinafter "plan termination clause"). The post-retirement life insurance benefits section of the plan description did not include either a lifetime benefits clause or a plan termination clause. Copies of the 1991, 1995, and

1998 plan descriptions were distributed to UAW, UAW-represented active employees, and to those already retired from RPI.

RPI provided its retirees with health and life insurance benefits from 1989 through November 1999. During that time, named plaintiffs Elton Kopplin and Joseph Wadzinski and all members of the represented class retired from RPI. Kopplin states that Suzanne Buchanan, RPI's Manager of Benefit Programs, told him when he retired that RPI would provide him with insurance benefits for the remainder of his life. The plaintiffs allege that Nancy Kolar, a RPI Benefits Administrator, also told retirees that RPI would maintain post-retirement health benefits for the period of their lives. Upon retiring from RPI, each retiree was provided with a benefit calculation sheet which summarized his or her expected monthly post-retirement benefits; these documents do not state the expected duration of benefits nor did they state that RPI reserved a right to modify the benefits.

In October 1999, RPI informed retirees that, due to financial pressures caused by the economic recession, it intended to reduce its share of medical insurance premiums paid on behalf of retirees and further to terminate the retirees' subsidized life insurance benefits, effective in December 1999. Concurrently, RPI less drastically modified the benefits for UAW-represented active employees. RPI announced a complete termination of health insurance benefits in September 2000, to take effect in December 2000.

On November 7, 2000, UAW and its affiliated Local 803 and two individuals, Elton Kopplin and Joseph Wadzinksi, filed a complaint alleging that RPI violated the Employee Retirement Income Security Act, 29 U.S.C. § 1002(1), ("ERISA") and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") when it made

unilateral changes to the retirees' existing post-retirement benefits mid-term of a collective bargaining agreement. The plaintiffs sought to certify a class consisting of 239 former RPI employees who took early retirement under the terms of the pension annuity agreement between RPI and UAW. The district court granted the plaintiffs' motion for class certification on August 7, 2001. The class is defined as:

> All former UAW Local 803-represented employees of Rockford Powertrain, Inc. who were participants in the Rockford Powertrain, Inc. health plans as of November 30, 1999 and whose employment by Rockford Powertrain, Inc. had terminated after July 1, 1988. The class includes eligible dependents of such retirees and eligible surviving spouses of deceased former employees.

The parties filed cross-motions for summary judgment on the question of whether RPI was contractually obligated to continue providing post-retirement medical and life insurance for the duration of its retirees' lives and the lives of eligible surviving spouses. The district court granted RPI's motion for summary judgment, finding that the plan descriptions were incorporated into the collective bargaining agreement, and that the incorporation necessarily included the reservation of rights and plan termination clauses found in the plan description. Therefore, the district court held, RPI's modification and termination of benefits did not violate the bargaining provision of the collective bargaining agreement that barred mid-term unilateral changes. Further, the district court found that RPI was not estopped to terminate or modify the retirees' benefits, as no retiree was induced to retire on the basis of statements by RPI benefits personnel regarding lifetime benefits. Plaintiffs now appeal.

## II. Discussion

The plaintiffs' claim is based on RPI's plan for post-retirement medical and life insurance. Under ERISA, 29 U.S.C. § 1002(1), the benefits at issue are "welfare" benefits, which, unlike pension benefits, do not vest automatically. *Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 305 (7th Cir. 1996). "[U]nless an employer contractually cedes its freedom, it is generally free under ERISA, for any reason at any time, to adopt, modify, or terminate its welfare plan." *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and Santa Fe Ry. Co.*, 520 U.S. 510, 515 (1997) (internal quotations and citations omitted). Thus, it is an issue of contract interpretation whether RPI vested its retirees with post-retirement welfare benefits. *See Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564 (7th Cir. 1995). This Court applies "federal principles of contract construction, meaning that we will give contract terms their 'ordinary and popular' sense and avoid resort to extrinsic evidence when faced with unambiguous language." *Diehl*, 102 F.3d at 306.

"Summary judgment is particularly appropriate in cases involving the interpretation of contractual documents." *Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 602 (7th Cir. 1989). We review the district court's grant of summary judgment *de novo*, viewing all the evidence in the light most favorable to the plaintiffs. *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 546 (7th Cir. 1995).

The parties agree that the documents relevant to the plaintiffs' claim are the 1998-2001 collective bargaining agreement ("CBA") and the plan description, entitled "Hourly Benefit Plan Information," that RPI distributed in 1998 to UAW and all UAW-represented active and retired employees. The parties further agree that the terms of insurance, as described in the plan description, were negotiated and incorporated into the CBA.

Plaintiffs argue that RPI is contractually obligated to maintain health insurance benefits for the duration of the lives of its retirees and their eligible surviving spouses because the plan description includes the lifetime benefits clause: "health coverage is continued until . . . death . . .[i]f you die after retirement, health coverage may be continued for your spouse." In the plaintiffs' view, this statement unambiguously vests the retirees with welfare benefits for the duration of their lives. The plaintiffs' interpretation, however, ignores two equally important clauses contained in the plan description. The lifetime benefits clause was followed by the plan termination clause: "[i]n the event this group plan is terminated, [health insurance] coverage for you and your dependents will end immediately." That clause refers to RPI's reservation of its right to modify benefits, found in the "Future of the Plans" section of the plan description: "[a]lthough the company expects and intends to continue the plan indefinitely, it reserves the right to modify, amend, suspend or terminate them at any time."

We must resolve the tension between the lifetime benefits clause, and the plan termination and reservation of rights clauses, by giving meaning to all of them. *See Diehl*, 102 F.3d at 307 (stating that when "potentially conflicting provisions coexist within the same document . . . the rule that contractual provisions be read as parts of an integrated whole will lead a court to seek an interpretation that reconciles those provisions"). Reading the document in its entirety, the clauses explain that although the plan in its current iteration entitles retirees to health coverage for the duration of their lives and the lives of their eligible surviving spouses, the terms of the plan—including the plan's continued existence—are subject to change at the will of RPI. *See Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 99 (2d Cir. 2001) ("Here . . . we have S[ummary] P[lan] D[escription] language that *both* appears

to promise lifetime life insurance coverage at a particular level *and* clearly reserves Empire's right to amend or terminate such coverage. Because the same document that potentially provided the 'lifetime' benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.") (emphasis in original). *See also In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 904 n. 12 (3d Cir.1995) (holding that "the promise made to retirees was a qualified one: the promise was that retiree medical benefits were for life provided the company chose not to terminate the plans, pursuant to clauses that preserved the company's right to terminate the plan under which those benefits are provided"). The health insurance section of the plan description unambiguously does not provide the plaintiffs with vested lifetime health insurance benefits. Therefore, we need not resort to extrinsic evidence to interpret the contractual obligation between the parties. *See Diehl*,102 F.3d at 305.

Plaintiffs also argue that the plan description provided them with a vested right to life insurance benefits for the duration of their lives. In support, plaintiffs note that the text of the life insurance section of the plan description, unlike the health insurance section, contains neither a mention of the expected duration of benefits nor a statement regarding the termination of benefits. This argument is unavailing because the reservation of rights clause found in the "Future of the Plans" section, which states that RPI "reserves the right to modify, amend, suspend or terminate" benefits, applies with equal force to the life insurance benefits. There is no ambiguity in a plan description that states that retirees are currently entitled to life insurance benefits, but also that these benefits are subject to change.

Plaintiffs do not argue that the reservation of rights clause contained in the plan description results in unfair

surprise, nor could they. That reservation of rights clause was included in Borg-Warner's final post-retirement benefits plan and in every plan description published by RPI since 1988. When UAW and RPI assented to their first collective bargaining agreement in 1991, and to subsequent collective bargaining agreements in 1994, 1995, and 1998, UAW had the opportunity to negotiate for the removal of the reservation of rights clause. The plaintiffs characterize the plan descriptions as "unilaterally implemented" by RPI, but they also concede that the insurance plan was "negotiated and incorporated into Powertrain's CBA with the UAW." Unfortunately for the plaintiffs, the incorporation of the insurance plan into the CBA requires the incorporation of all clauses contained in the plan description, including the reservation of rights clause. As "[c]ourts do not sit to relieve contract parties of their improvident commitments," *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 609 (7th Cir. 1993), we must give meaning to that clause.

Next, the plaintiffs argue that, even if the plan descriptions do not provide a vested right to lifetime health and life insurance benefits, the CBA prohibits RPI from modifying post-retirement benefits during the term of the CBA.[1] In support, they cite the bargaining provision of the CBA, which states that, for the life of the CBA, neither RPI nor UAW is "obligated, to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement . . . . However, this Agreement may be amended or modified . . . in writing by mutual agreement." Thus, the plaintiffs argue, because the CBA states that the

---

[1] The issue of whether RPI may change the insurance benefits of active employees during the term of a collective bargaining agreement is not before this Court. The Supreme Court has recognized a distinction between mid-term unilateral modifications of the insurance benefits of retired and active employees. *See Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 188 (1971).

"Insurance Agreement" is "part of the overall labor agreement," the bargaining provision prohibits RPI from amending the terms of post-retirement insurance benefits absent written agreement from UAW.

We disagree. The text of the CBA does not discuss the terms of post-retirement welfare benefits. Instead, the CBA refers to the "Insurance Agreement" for all details regarding benefits. And, as discussed above, the parties agree that the "Insurance Agreement" is found in the plan description published by RPI. The CBA's incorporation of the Insurance Agreement necessarily incorporated the reservation of rights clause found in the plan description. Thus, RPI's unilateral reduction, and later termination, of post-retirement benefits was not an impermissible mid-term unilateral change because the text of the plan—and by incorporation, the text of the CBA—reserved RPI's right to alter the specific terms of insurance.

The plaintiffs cite *Diehl v. Twin-Disc, Inc.*, 102 F.3d 301 (7th Cir. 1996), for the proposition that the text of the CBA, rather than the text of insurance plan description, controls whether post-retirement benefits may be changed mid-term. In *Diehl*, the collective bargaining agreement, termed a "Shutdown Agreement," was negotiated three years after the Insurance Agreement to which the Shutdown Agreement referred. *Id.* at 302-03. The text of the Shutdown Agreement stated that "[a]ll persons retired . . . shall, notwithstanding any provision of the Insurance Agreement between the Company and the Union, . . . be entitled for the lifetime of the pensioner . . ." to benefits. *Id.* This Court held that the Shutdown Agreement unambiguously granted lifetime benefits to retirees, and therefore "abrogated whatever right Twin Disc may have had to terminate coverage" under the previously issued Insurance Agreement. *Id.* at 307. Further, the Court noted that the collective bargaining agreement in *Diehl* was an "independent contact, supported by separate consideration and capable of

modifying or supplanting prior contractual arrangements." *Id.* at 306-07. *Diehl* is thus inapposite to the present case because the 1998-2001 CBA contains no statement regarding the period of time during which retirees would be entitled to benefits; thus, there is no conflict between the terms of the CBA and the terms of insurance provided in the plan description.

Plaintiffs further argue that RPI vested lifetime benefits on a retiree-by-retiree basis when it furnished the retirees with "agreements" at the time of retirement. These "agreements" are actually benefit calculation sheets that confirm the gross pension benefit for each retiree and the net amount after insurance premium deductions and taxes. The plaintiffs argue that, since the benefit calculation sheets contain "no end date for receiving benefits," they necessarily vest the plaintiffs with lifetime benefits. We disagree. The benefit calculation sheets do not attempt to override the terms of the CBA or the plan description. In fact, a benefit calculation sheet from 1998 states that "[e]very effort has been made to calculate your benefits accurately. However, eligibility for benefits and the actual amount of any payment are determined only under the legal documents applying to the Plan." Thus, the benefit calculation sheets do not seek to vest the retirees with any benefit different from that found in the plan description.

Lastly, the plaintiffs argue that they detrimentally relied on representations made by RPI's personnel regarding the duration of their post-retirement insurance benefits. "The elements of ERISA-estoppel are: (1) a knowing misrepresentation by the defendant; (2) in writing; (3) with reasonable reliance by the plaintiff on the misrepresentation; (4) to the plaintiff's detriment." *Kamler v. H/N Telecommunication Services, Inc.*, 305 F.3d 672, 679 (7th Cir. 2002). The plaintiffs have failed to demonstrate that their decision to retire was made in reliance on statements by RPI's personnel; indeed, plaintiffs admit in their brief that the state-

ments at issue were made "during exit interviews after the retirees made their decisions to retire." As plaintiffs have failed to produce evidence to support their claim, the equitable estoppel argument must fail.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court granting summary judgment in favor of RPI.

A true Copy:

      Teste:

          _____
          ***Clerk of the United States Court of***
          ***Appeals for the Seventh Circuit***