RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

CHRISTINE MORRISON,

        *Plaintiff-Appellant,*

     *v.*

MARSH & MCLENNAN COMPANIES, INC., J & H
MARSH & MCLENNAN COMPANIES, INC., MARSH &
MCLENNAN COMPANIES, INC. EMPLOYEE WELFARE
PLAN, and METROPOLITAN LIFE INS. CO.,

        *Defendants-Appellees.*

No. 04-2011

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-71683—John Feikens, District Judge.

Argued: October 27, 2005

Decided and Filed: February 10, 2006

Before: KEITH, KENNEDY, and BATCHELDER, Circuit Judges.

————————————

## COUNSEL

————————————

**ARGUED:** Eva T. Cantarella, HERTZ, SCHRAM & SARETSKY, Bloomfield Hills, Michigan, for Appellant. Michael P. Roche, WINSTON & STRAWN, Chicago, Illinois, David M. Davis, HARDY, LEWIS & PAGE, Birmingham, Michigan, for Appellees. **ON BRIEF:** Eva T. Cantarella, Robert P. Geller, HERTZ, SCHRAM & SARETSKY, Bloomfield Hills, Michigan, for Appellant. Michael P. Roche, Cardelle B. Spangler, WINSTON & STRAWN, Chicago, Illinois, David M. Davis, HARDY, LEWIS & PAGE, Birmingham, Michigan, for Appellees.

————————————

## OPINION

————————————

DAMON J. KEITH, Circuit Judge. Plaintiff-Appellant, Christine Morrison, appeals from the district court's decision dismissing her claim for life insurance benefits and statutory penalties against the Defendants-Appellees, Marsh & McLennan Companies, Inc., J & H Marsh & McLennan Companies, Inc., Marsh & McLennan Companies, Inc. Employee Welfare Plan, and Metropolitan Life Insurance Company. For the following reasons, we **AFFIRM**.

1

## I. Background

Plaintiff-Appellant, Christine Morrison ("Morrison" or "Mrs. Morrison"), commenced this action on April 20, 2003, against Defendants-Appellees, Marsh & McLennan Companies, Inc. ("M&M"), the Plan Administrator, J & H Marsh & McLennan Companies, Inc. ("J & H"), a subsidiary of M&M, Marsh & McLennan Companies, Inc., Employee Welfare Plan ("M&M Plan"), and Metropolitan Life Insurance Company ("MetLife"), the insurer of the Plan, in a federal district court, for the Eastern District of Michigan. Plaintiff sought life insurance benefits after the death of her husband and statutory penalties in the amount of $110 per day for each day she was not provided with the Plan documents she had requested.

Bruce Morrison, the Plaintiff's deceased husband, was employed by M&M and/or one of its subsidiaries for nearly 30 years. As an executive of J & H, a subsidiary of M&M, he was earning an annual salary of $210,000 and had taken out Optional Life Insurance, in the amount of $1,050,000. Under his Optional Life Insurance plan, M&M deducted $115.50 from each of Mr. Morrison's paychecks as payment for this coverage. MetLife was the insurer of the life insurance benefits and was responsible for administering claims for such benefits. On January 5, 1999, Mr. Morrison resigned from J&H to take a job as a consultant with another firm.

Upon his resignation, Mr. Morrison received a letter from J&H, dated January 6, 1999, outlining the effect his resignation had on, *inter alia*, the life insurance benefits he received while employed by J&H. The letter explained that he could convert his Optional Life Insurance to (i) an individual policy within thirty-one days of his termination date without submitting evidence of his insurability, or (ii) a group policy, provided he make the required contributions directly to the plan insurer. The letter also provided Mr. Morrison with MetLife's contact information in order to obtain more information regarding each conversion option.

On January 18, 1999, Mr. Morrison submitted an application to continue his Optional Life Insurance coverage on a group basis in the amount of $1,000,000. This election was referred to as "portable" term life insurance coverage. Mr. Morrison and a benefits administrator for J&H completed their respective portions of the application form and Mr. Morrison sent the application and his initial premium payment of $707.65 to MetLife. On the application form, Mr. Morrison named his wife, Christine Morrison, as the beneficiary.

On February 10, 1999, MetLife sent Mr. Morrison a letter acknowledging receipt of his application for portable term coverage, but denied the application, explaining that this type of coverage is not available to Michigan residents. Because Mr. Morrison was a resident of Michigan, MetLife denied his application, refunded Mr. Morrison's premium check, and directed him to its Customer Service Unit with questions. Mr. Morrison did not submit any further premium payments to MetLife, request any further reconsideration, appeal, file suit, or otherwise communicate with MetLife concerning his application for portable life insurance.

Mr. Morrison passed away on January 28, 2001, nearly two years after MetLife denied his life insurance coverage. On August 29, 2002, over one year after her husband's death and over three and one-half years after MetLife denied Mr. Morrison's application for portable life insurance, Mrs. Morrison sent a copy of Mr. Morrison's death certificate and a letter to M&M. She requested that M&M pay her $1,000,000, the amount of life insurance benefits allegedly owed to her. This letter also requested (i) a copy of the insurance policy pertaining to the Optional Life Insurance in effect on the date MetLife received Mr. Morrison's application, (ii) a copy of Group Policy Form G.24315 issued to Chase Manhattan Bank, which was referenced in Mr. Morrison's application, and (iii) any plan updates in effect on the date MetLife received Mr. Morrison's application. M&M did not provide any of these documents. Instead, M&M responded that it would forward the letter to MetLife, which was responsible for administering claims for benefits. MetLife responded to Mrs.

Morrison and informed her, *inter alia*, that Mr. Morrison's Optional Life Insurance coverage terminated on January 5, 1999, the date he resigned his employment and portable term coverage had not been issued to Mr. Morrison because that particular type of insurance was not available to Michigan residents. Accordingly, MetLife denied Mrs. Morrison's request. She appealed the decision to MetLife. On or about March 18, 2003, MetLife again denied her request.

There are two plan documents which lay out the relevant benefits and obligations of employees, participants, and beneficiaries under the M&M Plan: the Plan Certificate and the Benefits Overview Handbook (the "Handbook" or "SPD"), a summary plan description. The Plan Certificate provides for continuing life insurance benefits under several conditions. Pertinent to this case, the Plan Certificate states that employees who make a request to continue Group Life Benefits, must "reside[] in a state which has approved such condition." (J.A. at 164).

Additionally, the Plan Certificate explains that "if you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court." (J.A. at 202). The Plan Certificate is silent as to when the suit must be filed. However, the Handbook or SPD, states that "if you feel you have cause for legal action, petition may be presented to the Company's General Counsel for service of legal process at the Company address," and that such legal cause of action *"must be brought within three years of the date your benefit was denied (or date your cause of action first arose, if earlier)."* (emphasis in original) (J.A. at 65).

On April 30, 2003, Mrs. Morrison brought a two-count complaint against M&M, J&H, the M&M Plan, and MetLife. In Count I of her Complaint, Morrison alleged that she was entitled to $1,000,000 of portable life insurance benefits for coverage that her husband was denied shortly after resignation from J&H. In Count II, Morrison contended that M&M, J&H, the M&M Plan, and MetLife owed her statutory penalties in the amount of $110 per day for each day they failed to provide her with requested Plan documents.

On July 11, 2003, M&M, J&H, and the M&M Plan filed a Motion to Dismiss Morrison's Complaint, pursuant to Fed.R.Civ.P. 12(b)(6). The motion asserted that (i) Morrison was not entitled to any benefits under the Plan; (ii) Morrison lacked standing to bring suit to collect benefits or statutory penalty fees; and (iii) Morrison's claims were barred by the Plan's three-year statute of limitations. M&M argued that (i) Mrs. Morrison's substantive claim accrued on February 10, 1999, the date MetLife denied Mr. Morrison's application, and (ii) because the Complaint was filed more than four years later, on April 20, 2003, the claim was untimely. MetLife filed a brief adopting M&M's Motion to Dismiss.

On October 3, 2003, Morrison filed a response opposing Defendants' Motion to Dismiss and a Cross-Motion for Summary Judgment, in which she argued, *inter alia*, that her claim for benefits was not time-barred. She contended that (i) the Handbook's limitations period was unenforceable because a similar provision was not contained in the Plan document; and (ii) even if the Handbook's statute of limitations was enforceable, her action did not accrue until December 12, 2002, the day of MetLife's second notice of denial, rather than February 10, 1999, the day MetLife denied Mr. Morrison's application for portable life insurance and refunded his initial premium payment. In the alternative, Morrison argued that her rights as a life insurance beneficiary did not arise until, at the very earliest, the date her husband passed away.

The district court denied Morrison's Cross-Motion for Summary Judgment and granted M&M's Motion to Dismiss on the grounds that (i) Morrison's claim was time-barred; and (ii) Morrison did not have standing to bring an action for statutory penalties. While initially noting that there was no valid life insurance policy of which Morrison was a beneficiary, the district court focused its holding on the issue of enforceability of the statute of limitations contained in the M&M Handbook. The court found no conflict between the Handbook and the M&M Plan document. The

two ERISA documents were reconcilable because the Plan's silence as to the limitations period did not render the Handbook's provision on the same issue ambiguous or contradictory. The district court also rejected Morrison's argument that her cause of action accrued, at the earliest, on December 12, 2002, when her claim as a beneficiary of life insurance proceeds was "formally" denied by MetLife. Instead, the court found that a "clear repudiation of benefits" serves to commence a cause of action for benefits and that occurred on February 10, 1999, when MetLife denied Mr. Morrison's application for portable insurance.

Lastly, the district court rejected Morrison's argument that she was entitled to statutory penalty fees, finding that Morrison never became a "participant" under the M&M Plan. Therefore, there was no relevant plan from which Morrison's alleged status as a Plan beneficiary could derive. Morrison filed this timely appeal.

## II. Jurisdiction

This Court has jurisdiction over Morrison's appeal pursuant to 28 U.S.C. § 1291, as the district court's order granting the Defendants' motion to dismiss is an appealable final decision.

## III. Analysis

We review the district court's decision to dismiss Morrison's suit pursuant to Fed.R.Civ. P. 12(b)(6) under a *de novo* standard. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997). A dismissal of a complaint may be affirmed if it appears that the non-movant can prove no set of facts in support of her claim that would entitle her to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). While reviewing courts construe the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true, a court is not required to accept as true unwarranted legal conclusions and/or factual allegations. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

We review the plan administrator's denial of benefits *de novo,* unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996). Where an ERISA plan gives the plan administrator such discretionary authority, we review under an "arbitrary and capricious" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). Review under the arbitrary and capricious standard is the least demanding form of judicial review of an administrative action; it requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process. *See Killian v. Healthsource Provident Adm'rs Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). MetLife was the claims fiduciary of the subject Plan and was granted express authority and discretion to interpret the Plan and administer claims and benefits. As the plan administrator, MetLife determined that Mr. Morrison was ineligible to participate in M&M's portable life insurance product because he was a resident of Michigan. Thus, if MetLife's interpretation of the Plan's provisions is "reasonable," it must be upheld. *Firestone,* 489 U.S. at 111; *Baker v. UMWA Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). The issue of reasonableness is a question of law, which this Court reviews *de novo. Waxman v. Luna,* 881 F.2d 237, 240 (6th Cir. 1989).

## A. Portable Life Insurance in Michigan

We acknowledge that Mrs. Morrison is seeking payment on a policy that MetLife could not issue under Michigan state law.[1] The district court found, and we agree, that MetLife could not have legally issued portable term coverage to Morrison's husband because the Michigan Insurance Bureau ("Bureau") had denied MetLife's application for approval of this product. As a matter of public policy, this Court is generally precluded from enforcing illegal contracts. *Jackson Purchase Rural Elec. Co-op. Ass'n v. Local Union 816, Int'l. Bhd. of Elec. Workers*, 646 F.2d 264, 267 (6th Cir. 1981) (*Jackson Purchase*) ("one who has . . . participated in an illegal act cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction."); 6 Samuel Williston & Richard A. Lord, *A Treatise On the Law of Contracts* §12:4 (4th ed. 1995 & Supp. 2005) (citing *MidMichigan Reg'l Med. Ctr. – Clare v. Prof'l Employees Div. of Local 79, Serv. Employee Int'l. Union, AFL-CIO*, 183 F.3d 497 (6th Cir. 1999)).[2]

In 1997, MetLife submitted an application to the Michigan Insurance Bureau for authority to issue portable term insurance. The application was denied on September 5, 1997, because "portability, as it generally operates, is not acceptable under current Michigan statutes." (J.A. at 272). On August 31, 1999, six months after MetLife had denied Morrison's participation in the portable insurance program, MetLife again sought approval from the Michigan Insurance Bureau. Again, the Bureau denied MetLife's application, this time because the state would not approve limits for coverage in excess of $149,099 for portable insurance.

On March 17, 2000, based on conversations with a Michigan Insurance Bureau representative, MetLife submitted another revised application, which was finally approved on March 20, 2000. MetLife, under this approval, did not have authority to offer coverage above $149,099. When Mr. Morrison applied for portable coverage, in January 1999, as a Michigan citizen and resident, he could not be a participant in a portable insurance policy. It would have been against Michigan insurance law for MetLife to provide such coverage to Morrison; additionally, it would be illegal then, as it is today, to provide coverage on a portable insurance policy over $149,099. Not only was MetLife's decision to deny Morrison portable life insurance evidence of a deliberate and principled reasoning process, but it was the only decision available to the insurer consistent with state law at the time.

## B. Statute of Limitations

Morrison's claim for benefits under her husband's portable life insurance policy is also time-barred. The district court found, and we agree, that under the M&M Plan, a person must bring a legal action within three years of the date his or her benefits were denied or the date the cause of action first accrued, if earlier. Mrs. Morrison's date of accrual for statute of limitations purposes was February 10, 1999, the date MetLife issued its rejection letter. Morrison did not attempt to initiate any action, legal or otherwise, as it relates to the alleged portable life insurance policy, until August 29, 2002, over one year after her husband's death and over three and one-half years after

---

[1] M.C.L. § 500.4424 does give the Michigan Insurance Bureau, specifically the Commissioner, the authority to approve at its discretion a portable insurance plan. However, in a letter written by the Bureau denying MetLife's application for portability, the Bureau refused to exercise its discretion, in part because the Michigan State Legislature had not considered approving the type of insurance that Mr. Morrison was seeking. *See* J.A. at 272 - 74.

[2] *Cf. Jackson Purchase*, 646 F.2d at 269 (Spiegel, J., dissenting) ("[T]he illegality of a contract does not automatically render it unenforceable. Out of the muddle of common law rules regarding illegality has come the general principle that illegal contracts are unenforceable only where (1) a statute explicitly provides that contracts contravening it are void or (2) where the interest in (the contract's) enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." (citations omitted) (quoting *California Pacific Bank v. Small Bus. Admin.*, 557 F.2d 218, 224 (9th Cir. 1977) (internal quotation marks omitted)); 5 Williston & Lord, *supra*, §12:1 (4th ed. 1995).

MetLife denied Mr. Morrison portable life insurance. At this point, Mrs. Morrison sent a copy of Mr. Morrison's death certificate and a letter to M&M requesting payment of benefits totaling $1,000,000 less the aggregate amount of the premium payments Morrison would have paid if MetLife had accepted his original premium payment tender and not denied his application.

Morrison erroneously argues that the three-year statute of limitations does not apply because the provision is only contained in the M&M handbook or SPD and not in the M&M Plan, as issued by MetLife. Her argument fails, however, as our case law instructs us to read the SPD and the Plan documents together as an integrated whole when there is no conflicting language. *See e.g.*, *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1013 (6th Cir. 1996) (interpreting both the SPD and Plan documents together to determine the scope of the plan's subrogation provisions, where the documents contained no "conflicting language."); *Musto v. American Gen. Corp.*, 861 F.2d 897 (6th Cir. 1988) (interpreting provision in both the Plan and the Handbooks to determine the plaintiff's rights under group insurance policies). When a statute of limitations provision is contained in the SPD and the Plan documents are merely silent on the limitations issue, there is no conflict between the two.[3] Since both the Handbook and the Plan govern the rights and obligations of M&M and its covered employees, *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 402 (6th Cir. 1998) (recognizing that Congress intended that Plan documents and Handbooks should govern obligations under ERISA plans), there is no conflict between the two, and the statute of limitations term is reasonable, *see Northlake Reg.'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998) (holding that contract limitation in ERISA plans are enforceable provided they are reasonable); *Doe v. Blue Cross & Blue Shield*, 112 F.3d 869 (7th Cir. 1997)(upholding application of plan's three year limitations period set forth in the ERISA plan instead of the state's six-year breach of contract period because three-year term was reasonable), we hold that the district court's finding that there is an enforceable three-year statute of limitations provision should be upheld.

Since we hold that the statute of limitations provision does apply, we must now determine the appropriate accrual date. Morrison would like us to hold that the accrual date for her claim is the date she first requested benefits under the policy, August 2003 or, alternatively, the date her rights allegedly vested – the death of her husband in January 2001. She claims as the beneficiary, the accrual date that would be applicable to her husband as a "participant" is not applicable to her as the "beneficiary." Her argument is without merit.

We start with the observation that in order for a person to be a beneficiary under ERISA, the ERISA participant must first qualify for the benefits provided in the plan. Moreover, a plaintiff claiming to be a "beneficiary" under the coverage can be in no better position than the participant would be. This result would be absurd since benefits flow from the participant to the beneficiary and the participant cannot possibly give more than he legally is entitled.

The rule governing when a cause of action accrues is the "clear repudiation" rule. This rule provides that when a fiduciary gives a claimant clear and unequivocal repudiation of benefits that alone is adequate to commence accrual, regardless of whether the repudiation is formal or not. *See Bennett v. Federated Mutual Ins. Co.*, 141 F.3d 837, 839 (8th Cir. 1998) (stating that "an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed when there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary") (quotation and citation omitted); *Wilkins v. Hartford Life*, 299 F.3d 945, 949 (8th Cir. 2002) ("When an ERISA claim is governed by a state statute of limitations the cause of action accrues, for limitations purposes, when the plan administrator formally denies the claim for benefits,

---

[3]We note, however, that we are not deciding whether our holding extends to those situations where a beneficiary provides evidence that he/she detrimentally relied on a plan's silence.

unless there was a repudiation by the fiduciary which is clear and made known to the beneficiary.")(quotation marks omitted); *see also Daill v. Sheet Metal Workers Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir. 1996); *Martin v. Constr. Laborer's Pension Trust for Southern California*, 947 F.2d 1381, 1385 (9th Cir. 1991).

Mr. Morrison submitted an application to continue his portable life insurance coverage on a group basis in the amount of $1,000,000. He and a benefits administrator for M&M completed their respective portions of the application form, and Mr. Morrison sent the application and his initial premium payment of $707.65 to MetLife.

On February 10, 1999, MetLife sent Mr. Morrison a letter acknowledging receipt of his application for portable term coverage, but denied the application, explaining that coverage had not been approved by the State of Michigan. Specifically, the letter stated:

> MetLife received your application for Portable Term Coverage on January 22, 1999. Before Portable Term Coverage may be offered to a particular state's residents, MetLife must receive approval from your state's insurance department. At this time, we still have not received approval for our Portable Term Life Insurance product. As a result, we must regrettably deny your application, a premium refund check for $707.65 is enclosed. If you have any questions please call Customer Service at 1-800-523-2894.

(J.A. at 142). The express terms of the Plan document state that the life insurance certificate may cover those employees who "make a request to continue Life Benefits, and reside in a state which has approved such continuation . . . ." (J.A. at 164). Because Mr. Morrison was a resident of Michigan, MetLife denied his application, refunded Mr. Morrison's premium check, and directed him to its Customer Service Unit with questions.

When MetLife issued its letter on February 10, 1999, denying Morrison's request for portable insurance, MetLife clearly and unequivocally repudiated Morrison's entitlement to the policy and therefore he was not a participant and his wife is not a beneficiary. Mr. Morrison may have considered this letter as a rejection, too. We find it suggestive that he accepted the premium refund check, had no further communications with MetLife about the portable insurance policy, and that he did not submit any other premium payments to MetLife.

Morrison's accrual date was February 10, 1999 –the date MetLife unequivocally repudiated his claim. Because Morrison did not appeal from that benefit determination within in the prescribed three-year period, he and his beneficiary have forfeited their claim.

## C. Statutory Penalties

Count II of Plaintiff's complaint seeks penalties under §502(c)(1) of ERISA, 29 U.S.C. §1132(c)(1), premised on the assumption that Defendants were obligated to provide her with the plan documents she requested. Section 502(c)(1) of ERISA provides that any administrator who fails to comply with a request for any information required by participant or beneficiary may in the court's discretion be personally liable in the amount of $110.00 per day. 29 U.S.C. § 1132(c)(1). The statutory language limits standing to participants or beneficiaries. A participant is defined as any employee or former employee who is eligible to receive benefits under the policy. 29 U.S.C. § 1002(7). The Supreme Court further defined the term "participant" in *Firestone* stating that it is a "former employee that has . . . a colorable claim to vested benefits." *Firestone,* 489 U.S. at 117 (defining "colorable claim to vested benefits" as a reasonable claim that 1) a person will prevail in a suit for benefits or that 2) eligibility requirements will be fulfilled in the future). Eligibility is determined at the time that the lawsuit is filed. Because Morrison was neither a participant nor a beneficiary under the M&M Plan at the time she commenced this action, she lacks standing to claim

that the defendants failed to produce requested Plan documents.  The district court therefore, appropriately held that she was not owed statutory penalties for the Defendants' failure to provide her with certain requested documents relating to the M&M Plan.  Plaintiff has not qualified as a participant or beneficiary since February 10, 1999, and is therefore not owed any statutory penalties.

**IV. Conclusion**

For the following reasons, we **AFFIRM** Judge Feiken's decision granting the Defendants' Motions to Dismiss.