NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0723n.06

No. 10-6150

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 05, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| WILLIAM J. SCHEIB, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| RETIREMENT PROGRAM PLAN FOR | ) | DISTRICT OF TENNESSEE |
| EMPLOYEES OF CERTAIN EMPLOYERS | ) | |
| AT THE U.S. DEPARTMENT OF ENERGY | ) | |
| FACILITIES AT OAK RIDGE, TENNESSEE; et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: COOK, WHITE, and DONALD, Circuit Judges.

BERNICE BOUIE DONALD, Circuit Judge. This case arises from the denial of Plaintiff-Appellant William Scheib's ("Scheib") request to have the balance of his accrued benefit in a work-sponsored pension plan rolled over into an Individual Retirement Account ("IRA"). After exhausting his ERISA administrative remedies, Scheib filed suit in the United States District Court for the Eastern District of Tennessee, naming as defendants the Retirement Program Plan for Employees of Certain Employers at the U.S. Department of Energy Facilities at Oak Ridge, Tennessee (the "Plan"); the Plan's sponsor and Scheib's employer, Babcock and Wilcox Technical Services Y-12 LLC ("B&W"); the Plan Administrator, Maureen Williams; and the Plan's Administrative Committee (collectively, "Defendants"). Scheib's complaint alleged that Defendants

acted arbitrarily and capriciously in denying his rollover request. The parties filed cross-motions for judgment on the administrative record. The district court granted Defendants' motion, denied Scheib's motion, and dismissed the case. After the court denied his motion to reconsider and/or alter or amend the judgment, Scheib appealed. For the reasons set forth herein, we **AFFIRM** the district court's judgment.

## I. BACKGROUND[1]

The facts of this case are not in dispute. Scheib participated in the Plan by virtue of his employment with B&W. The Plan qualifies as an "employee pension benefit plan" under ERISA, and it provides retirement benefits to eligible participants and beneficiaries. B&W is the Plan sponsor and Maureen Williams is the Plan Administrator. Williams is responsible for deciding participants' claims for benefits under the Plan. Participants may appeal Williams' decisions to an Administrative Committee.

Subsequent to taking a voluntary early retirement, Scheib requested on July 29, 2008, that his entire Plan balance be rolled over into a qualified IRA. On August 21, 2008, Williams sent Scheib an email explaining that the Plan did not permit such a transfer because it would amount to a "lump sum" distribution that was not authorized by the Plan. On October 20, 2008, Scheib appealed Williams's decision to the Administrative Committee. After the Administrative Committee

---

[1] The facts as presented herein are drawn largely from the findings of fact set forth in the district court's Memorandum Opinion.

denied his appeal, Scheib filed suit in district court alleging that Williams and the Committee acted arbitrarily and capriciously in denying his request for a rollover. On April 20, 2010, Scheib filed a motion for judgment on the ERISA administrative record. Defendants collectively filed a similar motion. On August 19, 2010, the district court entered a Memorandum Opinion in which it found that the determinations of the Plan Administrator and the Administrative Committee were not arbitrary and capricious. Accordingly, the court denied Scheib's motion for judgment on the administrative record and granted Defendants' motion, thereby dismissing Scheib's case. This appeal followed.

## II. ANALYSIS

The court reviews a plan administrator's denial of benefits *de novo*, unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Morrison v. Marsh & McLennan Companies, Inc.*, 439 F.3d 295, 300 (6th Cir. 2006). Where an ERISA plan gives a plan administrator such discretion, this court reviews eligibility determinations under the "arbitrary and capricious" standard. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). The arbitrary and capricious standard "is the least demanding form of judicial review." *Id.* It requires only "an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Id.* In ERISA cases, a court's review of a plan decision is generally limited to the evidence presented to the Administrator and in the administrative record at the time of the Administrator's decision. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).

In this case, the Plan vests the Plan Administrator with discretion to make decisions regarding claims for benefits under the Plan. Section 15.4(d) provides that

> the Plan Administrator shall have exclusive and final responsibility and *complete discretionary authority* to control the operations, management and administration of this plan . . . including (but not limited to) the *power to construe this Plan*, *to determine eligibility for benefits, and to resolve all interpretative . . . questions* that arise under the Plan. [emphasis added.]

We find this language to be a clear and express grant of discretionary authority to the Plan Administrator. The scope of our review is thus limited to the question whether Williams's interpretation of the Plan was arbitrary and capricious.

The parties' dispute turns on whether the Plan permits Scheib to roll the balance of his accrued benefit into an IRA. Several Plan provisions are relevant to the analysis. Scheib made his request pursuant to Section 9.4 of the Plan, which provides, in pertinent part, as follows:

> Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Participant's election under this Section 9.4, a Participant may elect, at the time and in the manner prescribed by the Plan Administrator . . . to have all or any portion of an *eligible rollover distribution* paid in a direct rollover directly to an eligible retirement plan specified by the Participant. . . .
>
> An "eligible rollover distribution" is any distribution of all or any portion of the balance to the credit of the Participant, except that an eligible rollover distribution *does not include*: (i) *any distribution that is one of a series of substantially equal periodic payments* (not less frequently than annually) made for the life (or life expectancy) of the Participant. . . . [emphasis added.]

- 4 -

Amendment No. 8, adopted March 15, 2005, is also relevant to the analysis. Prior to the

Amendment, Section 7.7 of the Plan provided as follows:

> 7.7 <u>Lump Sum Cash Outs</u>. *Subject to Section 9.4*, the lump sum Actuarial Equivalent of a Qualified Joint and Survivor Annuity under this Article VII shall be immediately distributed without the written consent of the Participant or the Participant's spouse if, at any time after the Participant terminates employment and before the Participant or Participant's spouse begins receiving Plan benefits in the form of an annuity, such amount is less than $3,500. For Plan Years beginning on or after January 1, 2000, "$5,000" shall be substituted for "$3,500" in this Section 7.7. *Except for the lump sum cash out provided for in this Section 7.7 or Section 9.2, no other benefits shall be payable in the form of a lump sum*. [emphasis added.]

Stated more succinctly, Section 7.7 once provided that if the total accrued benefit was below a

certain threshold, that benefit would be automatically distributed to the participant or beneficiary in

the form of a lump sum. The Plan language expressly provided that the only lump sum payments

authorized by the Plan were those described in Sections 7.7 and 9.2.[2]

Amendment No. 8 changed some of the wording of Section 7.7 and added the following

provision:

> Effective as of March 28, 2005, all lump sum cash outs and the lump sum form of payment shall be eliminated. Except for the lump sum cash out provided for in this Section 7.7 or Section 9.2 prior to March 28, 2005, no other benefits shall be payable in the form of a lump sum.

---

[2] Neither party alleges that the type of payments described in Section 9.2 are available to Scheib or applicable in the context of the present case.

The stated purpose of Amendment No. 8 was to "eliminate lump sum cash outs and payments of benefits to avoid the automatic rollover requirements that will apply to lump sum distributions between $1,000 and $5,000 on or after March 28, 2005."

Scheib argues that Section 9.4 permits him to roll the entire balance of his accrued benefit into an IRA. He also contends that his ability to elect such a rollover is not affected by Amendment No. 8 because of Section 9.4's "[n]otwithstanding any provision of the Plan to the contrary" language, as well as the "Subject to Section 9.4" caveat that appears in Amendment No. 8. In fact, Scheib contends that Amendment No. 8 is irrelevant to the present controversy because it pertains only to "lump sum cash outs," not direct rollovers. As Scheib sees it, a direct rollover "is an option entirely distinct from a lump sum cash-out," and "nothing [in Amendment No. 8] alter[s] [Scheib's] right to elect a direct rollover as established by Section 9.4." Scheib insists that his position is supported by 26 U.S.C. § 401(a), which requires tax-qualified plans to offer a direct rollover option for eligible rollover distributions.

In denying Scheib's rollover request, Williams and the Administrative Committee interpreted the Plan as authorizing distributions only in the form of annuity payments, which are expressly excluded from the definition of "eligible rollover distribution." Before the obligatory "direct rollover option" is triggered, the Administrative Committee explained, the Plan "must elsewhere provide that the participant is eligible to receive a distribution in a form that can be rolled over." Because Amendment No. 8 eliminated the lump sum form of payment, the Plan no longer "authorize[s] a distribution to Scheib that he can [elect to] rollover." Defendants further maintain that a direct

rollover is not a "benefit" to which Scheib is "entitled," but rather an option that Scheib could elect if the Plan allowed lump sum cash outs. Scheib's position is that Section 9.4 not only defines "eligible rollover distribution," but creates an affirmative right to receive such a payment.

Under the highly deferential arbitrary and capricious standard, the Plan Administrator's interpretation of the Plan provisions must be upheld if it is "reasonable." *Morrison*, 439 F.3d at 300. Williams denied Scheib's request because it would require the Plan to make what she deemed an unauthorized lump sum distribution. Williams likened Scheib's rollover request to a request for a lump sum distribution because, as she explained in her email to Scheib, "a 'lump sum' distribution in your case refers to a full payout of the present value of your accrued benefit within the pension plan" to be "transferred to the custodian of an IRA . . . so that you may invest or withdraw at your direction." This, Williams advised, was not available to Scheib because he receives his benefit as a monthly annuity—a form of payment that does not qualify as an "eligible rollover distribution" to which the mandatory rollover option would apply.

We find that the interpretations of the Plan Administrator and the Administrative Committee were reasonable. Section 9.4 of the Plan and 26 U.S.C. § 401(a) mandate a direct rollover option *only* for "eligible rollover distributions." Scheib's monthly annuity payments do not qualify as "eligible rollover distributions." They are therefore expressly excluded from the scope of the mandatory rollover option. Scheib's argument that he is entitled to rollover the entire balance of his accrued benefit is simply not supported by the language of the Plan. It is not a Participant's accrued benefit to which the mandatory rollover option applies, but only to certain distributions (i.e.,

*payments*) made from the Plan to the Participant. The availability of the rollover option, and the obligation of the Plan to provide the option, hinges upon the form in which payment is made to the Participant. Neither ERISA nor the Internal Revenue Code mandate that a pension plan make payments to its participants in the form of a lump sum; rather, the plans by their terms dictate the form in which payments will be disbursed. Presently, the Plan at issue only authorizes annuity payments to which the mandatory rollover option is inapplicable. We find, therefore, that Williams's denial of Scheib's rollover request on the basis that his annuity payments do not qualify as "eligible rollover distributions" was a reasonable interpretation of the Plan.[3]

Finally, we address Scheib's allegation that Defendants were acting under a conflict of interest when they considered his rollover request and that this conflict of interest should factor into the court's analysis of whether the denial of his request was arbitrary and capricious. In the context of ERISA claims, a potential conflict of interest exists where the plan sponsor bears all or most of the risk of paying claims and also appoints the body designated as the final arbiter of such claims. *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n.4 (6th Cir. 2000). Under such circumstances, "the potential for self-interested decision-making is evident." *Id.* In support of this alleged conflict, Scheib points to language in Defendants' district court brief that forecasts the potential financial consequences of a decision in Scheib's favor, which according to Defendants

---

[3] Amendment No. 8 lends further support to the reasonableness of Williams's interpretation. The Amendment expressly eliminated the lump sum form of payment, and did so for the express purpose of avoiding the automatic rollover requirements that apply to such disbursements. Williams's interpretation was consistent with the purpose and effect of this Amendment. We emphasize that the legal consequences under ERISA or the Internal Revenue Code of eliminating the lump sum form of payment is not the question before us; we consider only the reasonableness of Williams's finding that the Plan no longer authorized such payments.

could range from the "tens of millions to as much as a few billion dollars." Otherwise, Scheib's

allegations amount only to speculation. Specifically, Scheib's brief posits:

> Presumably, defendants enjoy the fact that they have not had to go to DOE[4] to request more funding for the Plan in over 26 years, and it is equally reasonable to assume that the defendants have an incentive, via their various contractual relationships, direct and indirect, with DOE, to continue the streak of years for which they have not had to request pension money from DOE. If defendants considered that possibility when they were interpreting the terms of the Plan in connection with plaintiff's claim, and plaintiff respectfully submits it is quite clear from defendants' submissions to the district court that they did, that would be a conflict of interest, which should be taken into account when deciding whether their interpretation of the Plan was arbitrary and capricious.

Scheib's allegations regarding Defendants' "incentives" to deny his rollover request are unsupported

by any facts in the administrative record. Moreover, Scheib's admission that it is not B&W, the Plan

sponsor, but the Department of Energy that bears financial responsibility for funding the Plan cuts

against his argument that the Plan Administrator and/or the Administrative Committee was operating

under a conflict of interest. Finally, even if Scheib succeeded in establishing a conflict of interest,

it would be but "one factor" to consider when evaluating the Plan Administrator's decision to deny

benefits under ERISA. *See Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 311 (6th

Cir. 2010). If the decision was nevertheless supported by substantial evidence, it ought to be upheld.

*Id.* at 312.

---

[4] The Department of Energy is under contract with B&W to "reimburs[e] its contractors for allowable pension and postretirement benefit plan costs, and records a liability or asset in its financial statements for the funded status–plan obligations less plan assets–of these benefit plans." (Appellee's Brief at 10.) In other words, when the Plan is not sufficiently funded to make a distribution of benefits, DOE makes up the deficit, not B&W.

In sum, we find that Defendants' interpretation of the Plan as precluding the rollover Scheib requested was reasonable. Additionally, there is no evidence that Defendants were operating under a conflict of interest when they denied Scheib's rollover request. Therefore, the decisions of Williams and the Administrative Committee should be upheld.

## V. CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the district court's judgment.

**HELENE N. WHITE, Circuit Judge**, concurring. The dispositive question is whether section 9.4 grants program participants the right to direct that the accrued value of their benefits be rolled over into a qualified IRA, as Scheib contends, or whether that section simply provides that if a distribution of an employee's accrued credit balance is made in a form other than as one of a series of periodic payments, the employee has a right to roll the distribution over into a qualified IRA. I agree that the administrator's interpretation of the plan consistent with the latter meaning is not arbitrary and capricious. The language of the section is ambiguous, and the right to elect a lump-sum distribution that can be rolled over is found nowhere else in the plan. I therefore join in the affirmance.